Lorraine GARGIUL, Plaintiff,

v.

Virgil E. TOMPKINS, Individually and as District Superintendent of Liverpool Central School District, James Johnson, Individually and as Acting Superintendent of Liverpool Central School District, Dennis Jones, Individually and as Coordinator of Personnel of Liverpool Central School District, Dr. Paul A. Day, Individually and as Chief Medical Inspector for the Liverpool Central School District, F. Robert Kolch, Individually and as Clerk of the Board of Education of the Liverpool Central School District, Arthur D. Little, Bruce C. Vojt, Emilio Chasse, Doris Ann Connor, David A. Files, Marie Hartwell, Richard J. Jayko, Toni Anne Morris, Lloyd J. Spafford, as Individuals and as Members of the Board of Education of the Liverpool Central School District, the Board of Education of the Liverpool Central School District, Liverpool, New York, and Arnold Dettor, as Hearing Officer appointed pursuant to the New York State Education Law, Defendants.

No. 76–CV–233.

United States District Court,
N. D. New York.

Oct. 30, 1981.

Bernard F. Ashe, Albany, N. Y., for plaintiff; Rocco A. Solimando, J. Michael Eadry, Albany, N. Y., of counsel.

O'Hara & O'Hara, Liverpool, N. Y., for defendants; Edward A. O'Hara, III, Liverpool, N. Y., of counsel.

## MEMORANDUM–DECISION AND ORDER

MINER, District Judge.

### I.

This civil rights action arises out of the dismissal of plaintiff, for insubordination and incompetency, from her position as a tenured school teacher in the Liverpool Central School District. Jurisdiction is founded upon the provisions of 28 U.S.C. secs. 1331 and 1343 and 42 U.S.C. sec. 1983. Before the Court is plaintiff's motion for partial summary judgment awarding "... all back salary and benefits due to her from the time of her suspension for refusal to take the physical examination by a male physician on March 17, 1975 until the date of her dismissal by the defendant Board on May 24, 1977." (par. 25, Affidavit of J. Michael Eadry in support of motion.)

### II.

In September of 1974 plaintiff commenced to perform her duties as a kindergarten teacher for the 1974–75 school year. On November 27, 1974, she took a sick leave from her employment and thereafter informed school district officials that she would be able to return to her employment on March 17, 1975.

On February 5, 1975, the Superintendent of Schools notified plaintiff that, pursuant to both the teachers' collective bargaining agreement and sec. 913 of New York's *Education Law*, she should report to the chief school district physician, Dr. Paul Day, for physical examination. By further correspondence, the school district sought to obtain plaintiff's private medical records for evaluation by Dr. Day.

On March 10, 1975, the Board of Education adopted a resolution requiring plaintiff to submit to a physical examination by the school district physician, should the physician determine a physical examination was necessary after reviewing the plaintiff's medical records. After the medical records were supplied, Dr. Day determined that an examination would be necessary, and the plaintiff was so informed. However, the physician did not decide whether a "hands on" examination would be required, reserving decision on that question until plaintiff reported to his office for the initial meeting. It is uncontroverted that plaintiff never appeared at the office of Dr. Day and that she refused to be examined by him.

Shortly after March 10, 1975, the District placed plaintiff on a leave of absence without pay until such time as the questions

regarding her medical status were clarified. On September 5, 1975, plaintiff was charged by defendant Johnson, Acting Superintendent of Schools, with incompetency as a teacher and with insubordination for her refusal to be examined by Dr. Day. On May 24, 1977, after a hearing pursuant to sec. 3020–a of New York's *Education Law*, plaintiff was dismissed on grounds of insubordination and incompetency. In its determination, the Board of Education denied an allowance of back pay from March 17, 1975 on the ground that the suspension was due solely to plaintiff's refusal to be examined by the district physician and was not related to the later charges of incompetency. An appeal from the decision of the School Board was dismissed by the Commissioner of Education on February 24, 1976.

### III.

Plaintiff Gargiul claims that she did not refuse to be examined by a physician. She asserts that defendants demanded that she be examined by a male physician, Dr. Day, and that an examination by a male physician violated her sense of privacy and was anathema to her private creed. Plaintiff is seeking partial summary judgment on the issue of back pay and benefits claimed to be due to her from March 17, 1975 until May 24, 1977. Plaintiff contends that her suspension without pay, based on her refusal to submit to an examination by a male physician, is a violation of privacy rights under the first, fourth, ninth and fourteenth amendments to the U.S. Constitution. Plaintiff further contends that there are no disputes of fact concerning plaintiff's suspension without pay.

### IV.

█ Subdivisions (a) and (b) of Rule 56 Fed.R.Civ.P. authorize a motion for summary judgment "upon all or any part" of a claim by a claimant or a defending party. *See* Wright and Miller, *Federal Practice and Procedure*, sec. 2736. However, summary judgment is a drastic remedy which should be granted only when it is clear that the requirements of Rule 56 of the Fed.R.

Civ.P. have been satisfied. *United States v. Bosurgi*, 530 F.2d 1105, 1110 (2d Cir. 1976). "[S]ummary judgment is to be used not as a substitute for trial, but only when '. . . it is quite clear what the truth is [and] that no genuine issues remain for trial.' *Sartor v. Arkansas Natural Gas Corp.*, 321 U.S. 620, 627 [64 S.Ct. 724, 729, 88 L.Ed. 967] (1944)." *Pfizer, Inc. v. International Rectifier Corp.*, 538 F.2d 180, 184–85 (8th Cir. 1976), *cert. denied*, 429 U.S. 1040, 97 S.Ct. 738, 50 L.Ed.2d 751 (1977). Indeed, the reviewing court must accept as true factual statements in the opposing party's affidavits; draw all permissible inferences in that party's favor, *Quinn v. Syracuse Model Neighborhood Corp.*, 613 F.2d 438 (2d Cir. 1980), *see also Hill v. A–T–O, Inc.*, 535 F.2d 1349 (2d Cir. 1976); and resolve any doubts in favor of the latter, *American Mfrs. Mutual Ins. Co. v. American Broadcasting—Paramount Theatres, Inc.*, 388 F.2d 272 (2d Cir. 1967). In short, plaintiff here has the dual burden of demonstrating that no genuine issue of material fact exists and that she is entitled to judgment as a matter of law. *Adickes v. S. H. Kress & Co.*, 389 U.S. 144, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970). Plaintiff's motion for summary judgment must be denied because she has failed to establish that she is entitled to judgment as a matter of law.

### V.

█ The crux of plaintiff's argument is that plaintiff's constitutional right to privacy has been impermissibly violated by the defendants. While there is no "right to privacy" found in any specific guarantee of the Constitution, the Supreme Court has recognized that "zones of privacy," created by specific constitutional guarantees, impose limits upon government power. *See Roe v. Wade*, 410 U.S. 113, 153–155, 93 S.Ct. 705, 726–28, 35 L.Ed.2d 147 (1973), *see also Griswold v. Connecticut*, 381 U.S. 479, 85 S.Ct. 1678, 14 L.Ed.2d 510 (1965) (establishing that the right to privacy emanates from the "penumbras" of the first, third, fourth and ninth amendments to the Constitution); *see, e. g., Katz v. United States*, 389 U.S.

347, 351, 88 S.Ct. 507, 511, 19 L.Ed.2d 576 (1967), *Schmerber v. California*, 384 U.S. 757, 86 S.Ct. 1826, 16 L.Ed.2d 908 (1966). Moreover, the Supreme Court in *Roe v. Wade*, 410 U.S. 113, 93 S.Ct. 705, 35 L.Ed.2d 147 (1973), held that the constitutional protection of privacy was founded in the fourteenth amendment's due process guarantee of liberty. In *Roe* the Court pointed out that the personal rights found in this guarantee must be limited to those which are "fundamental" or "implicit in the concept of ordered liberty" as described in *Palko v. Connecticut*, 302 U.S. 319, 325, 58 S.Ct. 149, 82 L.Ed. 288 (1937). The activities detailed as being within this privacy definition are matters relating to "... marriage, procreation, contraception, family relationship and child rearing and education.... [In] these areas it has been held that there are limitations on the state's power to substantively regulate conduct." *Paul v. Davis*, 424 U.S. 693, 713, 96 S.Ct. 1155, 47 L.Ed.2d 405 (1976). The real question here is whether there exists a constitutional right for a female tenured teacher to refuse to submit to a required school district physical examination by a district-employed male physician. There does not. Plaintiff Gargiul's alleged interest is neither fundamental nor implicit in the concept of ordered liberty. It is a mere personal predilection against male physicians.

■ A right to personal privacy is "fundamental only when it is of such character that it cannot be denied without violating the fundamental principles of liberty and justice which lie at the base of civil and political institutions." *Griswold, supra*, 381 U.S. at 493, 85 S.Ct. at 1686. It must not be a "personal opinion or predilection."

*Roe v. Wade, supra*, 410 U.S. at 152, 93 S.Ct. at 726. Plaintiff does not allege that the School District's order of a physical examination by a male physician violates some "... marriage, procreation, contraception, family relationship[s] ... or education interest ..." *Paul v. Davis, supra*, 424 U.S. at 713, 96 S.Ct. at 1166. Instead plaintiff argues that an examination by a male physician would violate her sense of privacy and personal creed. Her argument is based on personal preference, not upon a well recognized principle of liberty and justice.[1] There simply is no constitutionally recognized right to refuse a medical examination because the physician is a male.

In light of the foregoing, plaintiff's motion for partial summary judgment hereby is denied.

It is so Ordered.

---

1. The Supreme Court has recognized that the breadth of constitutional protection afforded the public is much greater than the protection afforded public servants. *See, e. g., Kelley v. Johnson*, 425 U.S. 238, 96 S.Ct. 1440, 47 L.Ed.2d 708 (1976) (where police departments were allowed to promulgate regulations governing the appearance of its officers); *cf. Cleveland Board of Education v. LaFleur*, 414 U.S. 632, 94 S.Ct. 791, 39 L.Ed.2d 52 (1974) (where the court struck down school regulations which required mandatory commencement of maternity leave during early months of

pregnancy; however, the court noted that certain reasonable regulations are enforceable, including reliance on a school district physician to determine the ability of a teacher to teach during early months of pregnancy). Along these lines it is not wholly unreasonable for the School District to order an employee to consult a physician—even a male one—to determine the status of a disability claim under New York's *Education Law*, sec. 913. *See Brodsky v. Board of Education of Brentwood*, 64 A.D.2d 611, 406 N.Y.S.2d 533 (2nd Dept. 1978) for an interpretation of sec. 913 constitutionality.