**Lorraine GARGIUL, Plaintiff-Appellant,**

**v.**

**Virgil E. TOMPKINS, Individually and as District Superintendent of Liverpool Central School District, James Johnson, Individually and as Acting Superintendent of Liverpool Central School District, Dennis Jones, Individually and as Coordinator of Personnel of Liverpool Central School District, Dr. Paul A. Day, Individually and as Chief Medical Inspector for the Liverpool Central School District, F. Robert Kolch, Individually and as Clerk of the Board of Education of the Liverpool Central School District, Arthur D. Little, Bruce C. Vojt, Emilio Chasse et al., Defendants-Appellees.**

**No. 150, Docket 85-7382.**

United States Court of Appeals,
Second Circuit.

Argued Sept. 18, 1985.

Decided May 14, 1986.

Daan Braveman, Syracuse, N.Y. (Richard Goldsmith, Syracuse University College of Law, Syracuse, N.Y., on brief), for plaintiff-appellant.

John V. Bell, Syracuse, N.Y. (Dennis G. O'Hara, O'Hara, Felice & Crough, Syracuse, N.Y., on brief), for defendants-appellees.

Before OAKES and NEWMAN, Circuit Judges, and POLLACK, District Judge.*

* The Honorable Milton Pollack of the United States District Court for the Southern District of New York, sitting by designation.

JON O. NEWMAN, Circuit Judge:

This appeal presents, in a complex setting, issues concerning application of the doctrine of *res judicata* to a claim under 42 U.S.C. § 1983 (1982). Lorraine Gargiul appeals from a judgment of the District Court for the Northern District of New York (Roger J. Miner, Judge) dismissing her complaint for damages suffered because of her suspension from her position as a school teacher from 1975 to 1977, at which time she was terminated for incompetence. The termination is not challenged; only the denial of suspension pay is in issue. For reasons that follow, we affirm.

### Background

Lorraine Gargiul was a tenured kindergarten teacher in the Liverpool Central School District. She took an extended sick leave due to a back ailment in November 1974 and sought to return to work the following March. Virgil Tompkins, the Superintendent of Schools, ordered Gargiul to report to Dr. Paul Day, the school district physician, for a physical examination. Gargiul refused because it was against her "creed" to be examined by a male physician. She offered to be examined, at her own expense, by any female physician selected by Tompkins or a local medical society. Declining this offer, the Liverpool Board of Education suspended Gargiul without pay effective March 17, 1975, until Dr. Day could determine her physical fitness to resume her teaching duties.

At that point New York law afforded Gargiul two procedural routes for challenging the Board's suspension decision. A teacher can appeal a Board's decision either to the New York State Commissioner of Education, N.Y.Educ.Law § 310 (McKinney Supp.1984), or to the state courts by initiating an Article 78 proceeding in the New York Supreme Court, N.Y.Civ.Prac.Law & R. § 7801 (McKinney 1981). *See also* N.Y. Educ.Law § 3020-a(5) (McKinney 1981). If a teacher appeals the Board's decision to the Commissioner, an adverse decision by the Commissioner may then be appealed to the courts in an Article 78 proceeding.[1] However, if a teacher appeals the Board's decision to the Commissioner, the right to appeal the Board's decision directly to the courts is forfeited. *See Karin v. Board of Education*, 56 A.D.2d 721, 393 N.Y.S.2d 135, *leave to appeal denied*, 41 N.Y.2d 806, 364 N.E.2d 850, 396 N.Y.S.2d 1025 (1977) (*Karin II*); *Karin v. Board of Education*, 65 Misc.2d 179, 317 N.Y.S.2d 465 (Sup.Ct. 1970) (*Karin I*).[2]

Gargiul elected to appeal the Board's suspension decision to the Commissioner of Education. The Commissioner dismissed her appeal because N.Y.Educ.Law § 913 (McKinney Supp.1984) explicitly empowered the Board to require Gargiul to submit to a physical examination to certify her fitness. The Commissioner also rejected Gargiul's argument that an examination by a male physician could not be required because it was against her creed. Gargiul applied to reopen the Commissioner's decision on the ground that her constitutional right of privacy permitted her to refuse to be examined by a physician of the opposite sex. The Commissioner refused to consider Gargiul's constitutional claim because it had not been raised in the prior proceeding before him.

Gargiul did not exercise her right to challenge the Commissioner's adverse decision in an Article 78 proceeding in the state court. Instead, in the period between the Commissioner's original decision and the Commissioner's decision not to reopen the proceedings, Gargiul initiated an Article 78

---

1. Although N.Y.Educ.Law § 310 (McKinney 1969), in effect during the relevant period, states that proceedings before the Commissioner "shall be final and conclusive, and not subject to question or review in any place or court whatever," the New York courts will review determinations of the Commissioner that are "purely arbitrary," and errors of law are deemed to be arbitrary. *Baer v. Nyquist*, 34 N.Y.2d 291, 313 N.E.2d 751, 357 N.Y.S.2d 442 (1974).

2. *Karin I* and *Karin II* concern termination of a tenured teacher, but the state courts' rule that appeal of a Board's decision to the Commissioner bars direct appeal to the courts appears to be applicable to all adverse employment rulings, including a decision to suspend.

proceeding against the Board to challenge her suspension without pay. However, perhaps cognizant of *Karin I,* she sought pay during suspension primarily on grounds unrelated to the merits of the Board's suspension decision. She claimed that as a tenured teacher she had a right under state law to be paid while suspended, regardless of whether the suspension was proper. *See Jerry v. Board of Education,* 35 N.Y.2d 534, 324 N.E.2d 106, 364 N.Y. S.2d 440 (1974). She also claimed that the suspension without pay was improper under the Due Process Clause. The State Supreme Court dismissed her complaint as time-barred under N.Y.Civ.Prac.Law & R. § 217 (McKinney 1972), which requires suit against a school board to be brought within four months of the effective date of the challenged action. The Appellate Division affirmed the dismissal, ruling that the suit was time-barred and that the due process claim, which the Court viewed as procedural, lacked merit. *Gargiul v. Board of Education,* 54 A.D.2d 1085, 389 N.Y.S.2d 504 (1976), *leave to appeal denied,* 41 N.Y.2d 802, 362 N.E.2d 627, 393 N.Y.S.2d 1026 (1977) (*Gargiul I*). The preclusive effect of the decision in *Gargiul I* will ultimately be our concern on this appeal, but that issue will be better understood after explication of all the administrative and judicial developments pertinent to Gargiul's claim.

On August 9, 1975, the Board determined that there was probable cause to seek Gargiul's dismissal for insubordination in refusing to be examined by Dr. Day and for incompetence based on parents' complaints and unfavorable supervisors' reports. A tenure hearing panel was convened pursuant to N.Y.Educ.Law § 3020-a(3) (McKinney 1981). After hearings were held, the panel recommended that Gargiul be dismissed for incompetence but that she re-

ceive her salary from March 17, 1975, the effective date of her suspension, until the date of her termination. On May 23, 1977, the Board dismissed Gargiul but rejected the recommendation to pay her for the suspension period.[3]

Gargiul then commenced a second Article 78 proceeding, challenging both her termination and the Board's denial of suspension pay. The State Supreme Court denied relief. The Appellate Division affirmed, upholding her termination for incompetence as supported by substantial evidence and refusing to consider her claim for suspension pay because she had not appealed the Commissioner's earlier decision on the validity of her suspension in an action to which the Commissioner was a party. *Gargiul v. Board of Education,* 69 A.D.2d 986, 416 N.Y.S.2d 119, *leave to appeal denied,* 48 N.Y.2d 606, 397 N.E.2d 760, 421 N.Y.S.2d 1031 (1979) (*Gargiul II*).

Gargiul brought this action in the District Court pursuant to 42 U.S.C. § 1983 challenging the constitutionality of both her termination and her suspension without pay. The federal action was held in abeyance pending conclusion of the state proceedings. The District Court dismissed the complaint. On appeal, we considered the preclusive effects of *Gargiul I* and *Gargiul II* under our then prevailing rule that state court judgments would bar relitigation in section 1983 suits only of claims actually litigated, *i.e.,* applying collateral estoppel but not *res judicata. See Lombard v. Board of Education,* 502 F.2d 631, 635–37 (2d Cir.1974), *cert. denied,* 420 U.S. 976, 95 S.Ct. 1400, 43 L.Ed.2d 656 (1975). We held that *Gargiul II* barred relitigation of Gargiul's challenge to her termination and that *Gargiul I* barred her claim for suspension pay based on denial of proce-

---

**3.** Although *Jerry v. Board of Education, supra,* holds that a tenured teacher normally must be paid until termination, the Board apparently reasoned that in the circumstances of this case suspension pay could be denied because doing so would encourage compliance with the Board's orders. The New York courts have subsequently adopted this "compliance" exception to the continuing pay rights of tenured teacher.

*See Alderstein v. Board of Education,* 96 A.D.2d 1077, 466 N.Y.S.2d 973 (1983) (teacher refused to accept reassignment), *aff'd,* 64 N.Y.2d 90, 474 N.E.2d 209, 485 N.Y.S.2d 1 (1984); *McNamara v. Commissioner of Education,* 80 A.D.2d 660, 436 N.Y.S.2d 406 (1981) (teacher refused to undergo psychological examination), *appeal dismissed,* 64 N.Y.2d 1110, 479 N.E.2d 822, 490 N.Y.S.2d 186 (1985).

dural due process. *Gargiul v. Tompkins,* 704 F.2d 661 (2d Cir.1983). However, we refused to bar her substantive due process claim for suspension pay based on both denial of her constitutional right to privacy and the arbitrary nature of the Board's decision because that claim had not been litigated in either state court action. We also refused to give preclusive effect to the Commissioner's rejection of her suspension pay claim because of the informal nature of that proceeding. Reaching the merits, we held that the Board had acted arbitrarily in suspending Gargiul for refusing examination by a male/physician when she was willing to pay the expenses of a female physician selected by the Board. Since her suspension without pay was therefore improper, even though the subsequent termination for incompetence was valid, we remanded for determination of damages.

While the defendants' appeal to the United States Supreme Court was pending, the Court decided *Migra v. Warren City School District Board of Education,* 465 U.S. 75, 104 S.Ct. 892, 79 L.Ed.2d 56 (1984), and held that 28 U.S.C. § 1738 (1982) requires a federal court in a section 1983 action to give the same preclusive effect to a state court judgment as would the courts of the rendering state, regardless of whether the issues in the federal action had actually been litigated in a prior state action. The Court remanded this case to us for reconsideration in light of *Migra. Tompkins v. Gargiul,* 465 U.S. 1016, 104 S.Ct. 1263, 79 L.Ed.2d 670 (1984). We remanded the case to the District Court for a determination of whether New York would accord preclusive effect to *Gargiul I* or *Gargiul II* with respect to Gargiul's constitutional challenge to the denial of suspension pay. *Gargiul v. Tompkins,* 739 F.2d 34 (2d Cir. 1984). On that remand, the District Judge held that the New York law of *res judicata* barred this section 1983 action. This appeal followed.

### Discussion

In upholding a *res judicata* defense to Gargiul's claim for suspension pay, the District Court was obliged to determine whether a New York court would accord preclusive effect to the judgments in either *Gargiul I* or *Gargiul II. See Migra v. Warren City School District Board of Education, supra.* Reviewing the correctness of that determination, we are entitled, in this as in any case, to confine our consideration to the contentions advanced by Gargiul to the District Court and to this Court on appeal. *See Singleton v. Wulff,* 428 U.S. 106, 121, 96 S.Ct. 2868, 2877, 49 L.Ed.2d 826 (1976). Surely *Migra* did not eliminate that traditional discretion of reviewing courts. In deciding whether the District Judge erred in upholding the *res judicata* defense, we need not comb the record nor consider points not even presented to the District Court to identify possible reasons why a New York court might refuse to give preclusive effect to either of the pertinent state court judgments.[4]

Appellant contends that neither *Gargiul I* nor *Gargiul II* precludes her section 1983 claim for suspension pay based on her constitutional right to refuse examination by a male physician. She challenges the preclusive effect of *Gargiul I* only on the ground that the Board's action in suspending her without pay in March 1975 is a different transaction than the Board's 1977 decision to deny her suspension pay after it decided to terminate her. She advances this "separate transaction" argument obviously recognizing that the rejection of her claim for suspension pay in *Gargiul I* on limitations grounds was "on the merits" for preclusion purposes, *Smith v. Russell Sage College,* 54 N.Y.2d 185, 429 N.E.2d 746, 445 N.Y.S.2d 68 (1981), and that New York has adopted the transactional approach of the *Restatement (Second) of Judgments* for determining the scope of *res judicata, Reilly v. Reid,* 45 N.Y.2d 24, 379 N.E.2d 172, 407 N.Y.S.2d 645 (1978). Appellant

---

4. *Marrese v. American Academy of Orthopedic Surgeons,* —— U.S. ——, 105 S.Ct. 1327 (1985), is not to the contrary. *Marrese* merely holds that once a federal court determines, on arguments properly presented, that a state court would not accord preclusive effect to one of its prior judgments, the federal court may not bar a plaintiff because of that judgment.

contends that the 1975 and 1977 Board actions concerning suspension pay are separate transactions because the Board had power in 1977, despite its 1975 decision, to adopt the tenure hearing panel's recommendation and award her suspension pay, even though the Board adopted the recommendation to terminate her. We disagree with this contention.

■ The Board's 1977 decision denying suspension pay was simply a refusal to change its 1975 decision. The two operative facts, both undisputed, that underlie Gargiul's present claim had occurred in 1975: She refused to be examined by Dr. Day, and the Board suspended her without pay. Ultimately, as it turned out, these facts were deemed sufficient by this Court to support a legal conclusion that her suspension violated her constitutional rights. But in making that ruling, we explicitly declined to consider the *res judicata* effect of prior state court litigation. Now that we have been instructed to face that issue, we cannot ignore the reality that the critical facts underlying Gargiul's claim were as available for presentation in court at the time of *Gargiul I* as at any time thereafter. When the Board decided in 1977 to adhere to the decision it had reached in 1975, it did not generate any new fact bearing on the validity of the suspension pay claim, and no separate transaction occurred. We know this is the view of New York courts because of the way Gargiul's claim for suspension pay was rejected in *Gargiul II*. In that suit her claim for suspension pay was rejected because she had not appealed the Commissioner's decision in an action to which he was a party. Whether or not we would accord *res judicata* effect to an unappealed administrative decision, we are entitled to rely on the New York courts' assessment that the Board's denial of suspension pay in 1977, which

Gargiul challenged in *Gargiul II*, is the same transaction as the Board's denial in 1975. The unappealed decision of the Commissioner was an administrative review of the Board's 1975 decision.[5]

Gargiul's reliance on *O'Brien v. City of Syracuse*, 54 N.Y.2d 353, 355, 429 N.E.2d 1158, 1159, 445 N.Y.S.2d 687, 688 (1981), is unavailing. In that case, plaintiffs filed a 1973 lawsuit in which they claimed that certain municipal actions so seriously interfered with their property rights as to constitute a *de facto* taking. In a non-jury trial, that suit was dismissed for failure to establish a *de facto* taking. In 1978, plaintiffs filed a second lawsuit and, in addition to repeating their previous allegations, claimed that the city had taken their property by tax deed on June 1, 1977, and had trespassed on their property between 1967 and 1978. The New York Court of Appeals held that any claims arising prior to the first suit were barred by *res judicata*. It held that subsequent claims were not so barred. In *O'Brien*, each taking or trespass after 1973 injured plaintiffs anew and presented an independent basis for relief.

In the instant case it is true that the Board's 1977 decision, by confirming the decision not to award Gargiul suspension pay, denied her money throughout the suspension period, including the interval from April 8, 1976, the date of the petition in *Gargiul I*, until May 23, 1977, the date of her termination. But the denial for the entire suspension period is not a new injury, such as occurred in *O'Brien*. In 1975 the Board had decided not to pay Gargiul for whatever time she was under suspension. When she challenged that decision in *Gargiul I*, the state courts had authority to order the Board to pay her for the entire suspension period. At oral argument on this appeal, Gargiul disclaimed any entitlement to bring a new lawsuit each time a

5. Gargiul contends that *Gargiul II* sends another message, one that supports her attack on the preclusive effect of *Gargiul I*. She relies on the fact that her suspension pay claim was rejected in *Gargiul II* only because she failed to appeal the Commissioner's ruling and not because of the preclusive effect of *Gargiul I*. However, the

fact that the Appellate Division gave only one reason why it deemed the suspension pay claim foreclosed is no indication that, had it directly considered the point, it would not have found the claim also barred by the preclusive effect of *Gargiul I*.

pay check failed to arrive during the suspension period. She also has no right to escape the *res judicata* effect of *Gargiul I* simply because the Board adhered in 1977 to its 1975 decision not to make any payments during the suspension period.

Even if we extended our consideration of the correctness of the District Court's ruling beyond the "separate transaction" argument advanced by appellant to avoid the *res judicata* effect of *Gargiul I*, we would still agree with the District Court's conclusion. After Gargiul was suspended without pay, there is no question that she could have elected to bring an Article 78 proceeding to vindicate solely her statutory right to suspension pay. That action would not have contested the merits of her suspension, only the denial of pay even on the assumption that her suspension had been proper. Had she proceeded only to bring such an action, she could then have waited to see whether the suspension ultimately resulted in termination, and, if so, brought a second Article 78 proceeding to challenge the termination and, for the first time, to challenge the merits of the suspension. In New York a post-termination lawsuit may include a challenge to the merits of a suspension even though the teacher has brought a prior lawsuit to assert only a statutory right to suspension pay. *Soucy v. Board of Education,* 51 A.D.2d 628, 378 N.Y.S.2d 500 (1976); *Wolfson v. Board of Education,* 47 A.D.2d 748, 365 N.Y.S.2d 30 (1975). The opportunity to bring a limited interim lawsuit protects tenured teachers and conserves judicial resources. The teacher can secure income during suspension; the court is spared inquiry into the

merits of the suspension unless and until the teacher is terminated.[6]

However, Gargiul did not content herself with an attempt to secure suspension pay, leaving the merits of the suspension to be litigated after termination, if one were ordered. Instead she challenged the merits of her suspension to the Commissioner and had secured a final ruling rejecting her challenge before she filed her Article 78 petition seeking suspension pay. At that point she could no longer defer a court challenge to the merits of her suspension until after her termination. We know this from the decision in *Gargiul II.* That decision ruled that the suspension challenge normally available to a teacher after termination was not available to Gargiul because she had already challenged the merits of her suspension to the Commissioner and had failed to appeal his adverse ruling.[7] In other words, at the time of her petition in *Gargiul I,* she either had to challenge the merits of her suspension in a timely Article 78 petition or forever lose the right to make such a challenge.

We can safely predict that, once Gargiul challenged her suspension to the Commissioner and obtained a final decision at the time she filed her petition in *Gargiul I,*[8] New York would require her to join in *Gargiul I* all her available challenges to the Board's 1975 decision to suspend her without pay.[9] A contrary conclusion would attribute to the New York courts the improbable view that a suspended teacher who has received adverse rulings from a Board on her claim for suspension pay and an adverse ruling from the Commissioner on her challenge to her suspension can

6. If the teacher is not terminated, there will normally be no need to adjudicate her suspension, especially if she has vindicated her right to suspension pay.

7. We are not according preclusive effect to *Gargiul II.* Instead we are simply learning from that ruling an aspect of New York law that would apply to any litigant in Gargiul's circumstances.

8. The petition to reopen the Commissioner's decision did not deprive that decision of finality. *See City School District v. Ambach,* 86 A.D.2d

726, 446 N.Y.S.2d 571, *leave to appeal denied,* 56 N.Y.2d 503, 436 N.E.2d 195, 450 N.Y.S.2d 1025 (1982).

9. In reaching this conclusion, we are not according preclusive effect to the unappealed decision of the Commissioner. Instead we are according preclusive effect to the adverse judgment rendered in *Gargiul I* and doing so, in part, because the adverse decision of the Commissioner was available for timely challenge in *Gargiul I.*

bring two successive Article 78 proceedings during the interim prior to her termination. We do not believe the New York courts would be hospitable to such proliferation of litigation. At the very least, we have no basis for thinking that the District Judge, whose experience with New York law deserves deference, *see Bernhardt v. Polygraphic Co.*, 350 U.S. 198, 204, 76 S.Ct. 273, 276, 100 L.Ed. 199 (1956), erred in making his prediction that New York courts would give preclusive effect to *Gargiul I.*

The preclusive effect of *Gargiul I* is reenforced by the nature of the legal challenge Gargiul there made even as to her claim for suspension pay. She did not rely solely on a statutory right to receive pay as a tenured teacher on the assumption that her suspension had been lawful. Instead she also claimed that the Board's action "in suspending [her] without pay" violated the Due Process Clause. On the prior appeal to this Court, we viewed this aspect of her claim in *Gargiul I* as an allegation of lack of procedural due process. 704 F.2d at 666. Even if it was only that, it was a claim necessarily challenging the lawfulness of the suspension itself. The Supreme Court has made it clear that when adverse action is taken in the absence of a required hearing, the person aggrieved can collect compensatory damages only by showing that a hearing would not have resulted in the adverse action; otherwise, only nominal damages are recoverable. *Carey v. Piphus*, 435 U.S. 247, 98 S.Ct. 1042, 55 L.Ed.2d 252 (1977). Therefore, when Gargiul sought to collect a year's worth of suspension pay on the additional ground that she had been denied her rights to procedural due process, she was necessarily claiming that, had a pre-suspension hearing been accorded, she would not have been suspended. That was a challenge to the merits of the suspension order. Surely the New York courts would not have permitted her to advance a procedural due process claim to the merits of her suspension and withhold for later litigation a further constitutional challenge to that suspension. For all of these reasons, *Gargiul*

*I* must be accorded preclusive effect against Gargiul's current claim for suspension pay.

■ Gargiul claims that, even if *Gargiul I* bars her from suing the Board and the individual defendants in their official capacities, she is not barred from suing the latter in their individual capacities because they were not parties to *Gargiul I* in their individual capacities. Upon remanding this case, we directed the District Court to consider "the significance, if any, of the lack of identity among the parties to the state and federal actions." *Gargiul v. Tompkins, supra*, 739 F.2d at 37. Judge Miner, relying on *Gambocz v. Yelencsics*, 468 F.2d 837 (3d Cir.1972), *Morgan Consultants v. AT & T*, 546 F.Supp. 844 (S.D.N.Y.1982), and *New Paltz Central School District v. Reliance Insurance Co.*, 97 A.D.2d 566, 467 N.Y.S.2d 937 (1983), held that *res judicata* bars a plaintiff from asserting claims against defendants not parties to a previous action where the claims arise out of the same transaction as that involved in the previous lawsuit and there is a close relationship between the two sets of defendants. *See also* 18 C. Wright, A. Miller, & E. Cooper, *Federal Practice and Procedure* § 4464, at 587–89 (1981). *But see Restatement (Second) of Judgments* §§ 34(3), 49 (1982) (if no collateral estoppel, issues against non-parties not precluded even if arising out of the same transaction). Moreover, New York law generally holds that a suit against an individual in his official capacity will bar a later suit, arising out of the same transaction, against him in his individual capacity. *See Giacamazzo v. Moreno*, 94 A.D.2d 369, 464 N.Y.S.2d 485, *leave to appeal denied*, 60 N.Y.2d 558, 457 N.E.2d 809, 469 N.Y.S.2d 1026 (1983). *But see Restatement (Second) of Judgments* § 36(2) (1982). However, damage claims in an Article 78 proceeding may only be asserted against individuals in their official capacities. *See* N.Y.Civ.Prac.Law & R. § 7806 (McKinney 1981). Therefore, Gargiul could not have recovered damages against the education officials in their individual capacities in *Gargiul I, see Leisner*

*v. Bahou,* 97 A.D.2d 860, 469 N.Y.S.2d 255 (1983), *appeal dismissed and leave to appeal denied,* 62 N.Y.2d 940, 468 N.E.2d 52, 479 N.Y.S.2d 214 (1984), and cannot be barred by *res judicata* from asserting claims she did not have an opportunity to litigate.

■ However, a remand for trial against the Board members in their individual capacities is not required because they are entitled, as a matter of law, to a good-faith immunity defense.[10] The individual defendants are entitled to immunity from damages if "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982).

We have previously held that, under the circumstances of this case, Gargiul's due process rights permitted her to refuse an examination by a male physician because she had offered to be examined by a female physician of the Board's choice at her own expense. *See Gargiul v. Tompkins, supra,* 704 F.2d at 668–69. The panel majority held that the Board's rejection of this offer denied due process because it was arbitrary. Although the panel majority did not rest the decision solely on denial of a constitutional right to privacy, considerations of privacy clearly influenced the majority's determination of arbitrariness. Gargiul's claim would not have been as strong if she had rejected examination by a qualified *female* physical selected by the Board and offered to pay for an examination by any other *female* physician of the Board's choosing.

Because the right to privacy "has been fleshed out to some extent on an ad hoc basis ... its borders are not well defined." *Id.* at 669 (Oakes, J., concurring). The Supreme Court has never held that there is

a right to refuse examination by a physician of the opposite sex. *See id.* at 670 (Oakes, J., concurring). Subsequent to the Board's decision in this case, courts have held that prisoners have a right not to be viewed unclothed by guards of the opposite sex, *Hudson v. Goodlander,* 494 F.Supp. 890 (D.Md.1980) (male prisoners); *Forts v. Ward,* 471 F.Supp. 1095 (S.D.N.Y.1978) (female prisoners), *rev'd on other grounds,* 621 F.2d 1210 (2d Cir.1980). Nevertheless, we cannot say that the right to refuse examination by a physician of the opposite sex was sufficiently established in 1975 to defeat a defense of qualified immunity. Indeed, the District Court ruled in 1981 that Gargiul did not possess such a right. *Gargiul v. Tompkins,* 525 F.Supp. 795 (N.D.N.Y.1981). Therefore, although freedom from arbitrary state action has long been acknowledged in a variety of contexts, we cannot say that a reasonable school board official in 1975 would have recognized that denial of Gargiul's offer to be examined at her own expense by a female physician of the Board's choosing implicated privacy considerations and constituted arbitrary action.

■ Gargiul makes two final challenges to the judgment of the District Court, contending that we should allow this lawsuit even if New York law would consider *Gargiul I* preclusive. First, she argues that she lacked a "full and fair opportunity," *Allen v. McCurry,* 449 U.S. 90, 101, 101 S.Ct. 411, 418, 66 L.Ed.2d 308 (1980), to litigate her constitutional claim in *Gargiul I.* Her brief does not identify any reason why this is so; it provides only a cross-reference citation to an earlier portion of the brief in which it was argued that the Board's 1977 denial of suspension pay was a transaction separate from the 1975 denial of suspension pay. We have already rejected that contention. If Gargiul means

10. Although this Court normally does not consider issues not adjudicated in the District Court, we have exercised our discretion to do so in lieu of a remand with respect to dispositive issues that conclude protracted litigation. *Chris-Craft Industries, Inc. v. Piper Aircraft Corp.,* 516 F.2d 172, 186–87 (2d Cir.1975) (redetermining damages), *rev'd on other grounds,* 430 U.S. 1, 97 S.Ct. 926, 51 L.Ed.2d 124 (1977); *Georgia Pacific Corp. v. U.S. Plywood-Champion Papers, Inc.,* 446 F.2d 295, 299 (2d Cir.) (same), *cert. denied,* 404 U.S. 870, 92 S.Ct. 105, 30 L.Ed.2d 114 (1971).

that the dismissal in *Gargiul I* on limitations grounds denied her the "full and fair opportunity" mandated by *Allen v. McCurry, supra,* she is mistaken. To be entitled to full faith and credit, a prior judgment "need do no more than satisfy the minimum procedural requirements of the Fourteenth Amendment Due Process Clause." *Kremer v. Chemical Construction Corp.,* 456 U.S. 461, 481, 102 S.Ct. 1883, 1897, 72 L.Ed.2d 262 (1982). And a state "may erect reasonable procedural requirements for triggering the right to an adjudication, [including] statutes of limitations." *Logan v. Zimmerman Brush Co.,* 455 U.S. 422, 437, 102 S.Ct. 1148, 1158, 71 L.Ed.2d 265 (1982).

Second, Gargiul claims that *Migra v. Warren City School District Board of Education, supra,* should not be given retroactive effect. Our remand to the District Court made clear our intention to apply *Migra* retroactively, *Gargiul v. Tompkins, supra,* 739 F.2d at 36–37, and we have no occasion to reconsider. In *Chevron Oil Co. v. Huson,* 404 U.S. 97, 92 S.Ct. 349, 30 L.Ed.2d 296 (1971), the Supreme Court identified three factors that may operate to deny retroactive application of Court decisions in the civil context: the decision must establish a new principle of law by overruling clear precedent; retroactive application must retard the purpose of the new rule; and retroactive application must produce "substantial inequitable results." *Id.* at 106–07, 92 S.Ct. at 355. *Migra* did overrule clear precedent in this Circuit. *See Lombard v. Board of Education, supra.* The purpose of *Migra,* to further comity by according full faith and credit in federal forums to state court judgments, would seem neither advanced nor retarded by retroactive application. However, the equities related to the law of preclusion clearly require *Migra's* retroactive application. In over ten years of litigation, Gargiul has been unable to have any body, administrative or judicial, state or federal, effectively adjudicate the merits of her constitutional claim. Indeed, the import of our successive holdings is that Gargiul has a meritorious claim that she may never assert for

suspension pay less whatever mitigating earnings she received. However, this state of affairs has been directly caused by Gargiul's own untimeliness and the multiplicity of her challenges to a single transaction: the Board's decision to suspend her without pay.

### Conclusion

The judgment of the District Court is affirmed.

OAKES, Circuit Judge (dissenting):

In *Migra v. Warren City School District Board of Education,* 465 U.S. 75, 104 S.Ct. 892, 79 L.Ed.2d 56 (1984), the Supreme Court held that in section 1983 suits federal courts, in determining the preclusive effect of earlier state court proceedings, must apply the same law of res judicata that the state courts would apply. Judge Newman's opinion, while artfully crafted, reaches, in my view, an incorrect answer to the crucial *Migra* question: would the New York courts have given the decision in *Gargiul I*—a case in which a tenured teacher raised a statutory claim for continued pay during her suspension and a procedural due process claim to the same effect—the preclusive effect of barring her section 1983 claim that since she was willing to pay for an examination by a female physician selected by the Board, the Board's suspension of her for refusal to be examined by a male physician was arbitrary and capricious and violated her privacy rights? Nothing in Judge Newman's opinion convinces me that the New York courts would give *Gargiul I* such preclusive effect. Nor does anything in the New York law of claim preclusion indicate that she would have had to raise her substantive constitutional claims in the state Article 78 proceeding in which she sought pay during suspension on statutory and procedural due process grounds. Instead, New York law forcefully indicates that a New York court would not hold that the earlier action bars this suit.

It was in March of 1975 that the Board of Education of the Liverpool Central School District suspended Gargiul, a kindergarten teacher, without pay for failing to submit to a physical examination by a male doctor, despite her scrupulously reasonable offer to pay for a female doctor of the *school's* choosing. As the majority points out, Gargiul chose to challenge this suspension through the statutorily prescribed administrative process, rather than in the state courts. Her 1976 appeal of the suspension to the Commissioner was rejected on February 24, 1976, and a rehearing was denied on June 15, 1976. She did not appeal the Commissioner's decision. Her Article 78 proceeding, filed April 8, 1976, was brought only to demand that the Board continue to pay her salary during her suspension. This it was apparently obligated to do under N.Y.Educ.Law § 3020-a (McKinney 1981), since the New York Court of Appeals had held in 1974 that tenured teachers could not be suspended without pay pending the final determination of disciplinary proceedings. *Jerry v. Board of Education*, 35 N.Y.2d 534, 324 N.E.2d 106, 364 N.Y.S.2d 440 (1974). Although the majority opinion states otherwise, the petition, including its request for relief, makes clear that the due process claim, as well as the statutory claim, did *not* challenge the propriety of the suspension itself. The Article 78 proceeding was held time-barred. *Gargiul v. Board of Education*, 54 A.D.2d 1085, 389 N.Y.S.2d 504 (4th Dep't 1976), *leave to appeal denied*, 41 N.Y.2d 802, 362 N.E.2d 627, 393 N.Y.S.2d 1026 (1977) (*Gargiul I*).

In April, 1977, a tenure hearing panel acting pursuant to section 3020-a sustained charges of incompetence but recommended Gargiul receive back pay retroactive to the date of her earlier suspension. In May, 1977, the Board terminated her for incompetence and refused back pay for the suspension period. On Article 78 review of this decision, the Appellate Division in April, 1979, upheld the incompetence finding and refused to reach the merits of the suspension without salary issue, holding that Gargiul was bound by the Commis-

sioner's prior determination since she had neither appealed his ruling nor joined him in the second Article 78 proceeding. *Gargiul v. Board of Education*, 69 A.D.2d 986, 416 N.Y.S.2d 119 (4th Dep't), *leave to appeal denied*, 48 N.Y.2d 606, 397 N.E.2d 760, 421 N.Y.S.2d 1031 (1979) (*Gargiul II*).

In June, 1976, before the Commissioner denied a rehearing and before the Article 78 proceeding for pay had been decided, plaintiff filed a section 1983 action in federal court. This action was permitted to remain in abeyance during the state proceedings. In 1982, Judge Miner dismissed the complaint for failure to state a claim. This court reversed. 704 F.2d 661 (2d Cir.1983). The Supreme Court then vacated and remanded, in light of *Migra*, to determine if New York res judicata law precluded the federal section 1983 suit. 465 U.S. 1016, 104 S.Ct. 1263, 79 L.Ed.2d 670 (1984). We remanded to the district court, 739 F.2d 34 (2d Cir.1984), which granted summary judgment to defendants on res judicata grounds.

I do agree with Judge Newman that appellant's approach to *Gargiul I*—that the 1975 and 1977 Board actions gave rise to two separate transactions, and that claims litigated in one action are therefore not a bar to claims that arose later out of subsequent events—is without merit under New York law. *O'Brien v. City of Syracuse*, 54 N.Y.2d 353, 429 N.E.2d 1158, 445 N.Y.S.2d 687 (1981). Our inquiry, however, does not end with a finding that there was only one transaction. While I agree with the majority opinion, at n. 4, that *Marrese v. Academy of Orthopaedic Surgeons*, —— U.S. ——, 105 S.Ct. 1327, 84 L.Ed.2d 274 (1985), does not compel us to go beyond the arguments raised by the parties, *Marrese* does require that federal courts not "give a state court judgment greater preclusive effect than the state courts themselves would give to it." *Id.* 105 S.Ct. at 1334. I therefore think it appropriate to go beyond the narrow arguments raised by the parties, where necessary to ensure that we do not give greater preclusive effect to prior state

court judgments than the state courts themselves would give.

Examination of New York law and Gargiul's proceedings makes clear that the state courts would not agree with the all-inclusive res judicata effect the majority would give to *Gargiul I*. *Gargiul I* was simply an interim effort by Gargiul to receive her pay during her suspension pending a final outcome of the section 3020-a process. She did not challenge the suspension itself in that action, and her Article 78 proceeding was the only way to enforce judicially her asserted right to receive pay pending the hearing panel decision.[1] There is no New York or other authority for the proposition that in that proceeding all of her substantive constitutional claims had to have been raised or lost. In fact, the New York law decidedly stands for the opposite proposition. In *Soucy v. Board of Education*, 51 A.D.2d 628, 378 N.Y.S.2d 500 (3d Dep't 1976), a tenured teacher waited until the end of the section 3020-a administrative process to bring an Article 78 proceeding to attack her termination on the merits and to demand her pay during suspension under *Jerry*. The court explicitly held, *"Petitioner could have brought a separate action or proceeding to secure payment of her salary pending the final determination. Petitioner was not required to enforce her right to compensation in a separate action or proceeding and may assert her right in this proceeding."* *Id.* at 629, 378 N.Y.S.2d at 503 (emphasis added) (citation omitted). *See also Board of Education v. Nyquist*, 48 N.Y.2d 97, 102, 397 N.E.2d 365, 367, 421 N.Y.S.2d 853, 855 (1979). *Soucy's* reference to a "separate action" makes clear that a prior action bringing a claim for pay would not bar the New York courts from subsequently considering the merits of the school board's actions, and indeed Judge Newman's opinion now concedes this, at 12. In any event, the *Soucy* decision is perfect-

ly reasonable, while the assertion that all constitutional claims had to be raised or lost in this interim proceeding would border, I think, on the absurd. The gist of the latter position would be that if a tenured teacher, while in the middle of a statutorily prescribed administrative termination process, seeks to bring an action asserting his statutory right to continue receiving pay pending its final outcome, he must also litigate all of his substantive constitutional claims, although he might ultimately win the administrative proceeding. If New York courts treated the pay claim proceeding as res judicata as to all substantive claims implicated by the suspension, the statutory right under section 3020-a(5) to appeal a final adverse hearing panel decision in an Article 78 proceeding would itself be rendered a nullity. Alternatively, if a tenured teacher wished to preserve his right to appeal a final adverse administrative decision, he would lose his right to enforce payment of his salary during his suspension. In the absence of the slightest indication that New York would require imposition of such a disruptive effect on its administrative procedures, we should not treat *Gargiul I* as relevant for res judicata purposes.

As I say, the majority concedes that under *Soucy* an interim Article 78 proceeding to vindicate a tenured teacher's statutory right to suspension pay during the section 3020-a administrative process would not preclude a subsequent challenge to the merits of the suspension. It concludes, however, that because *Gargiul I* included a procedural due process claim and because of the Commissioner's decision pursuant to N.Y.Educ.Law § 310 (McKinney 1969), *Gargiul I* precludes this section 1983 action. This reasoning I find impossible to follow. First, it transmogrifies her procedural due process claim in *Gargiul I* into a

1. Rather than beginning her challenge in state court, Gargiul could have initially brought her demand for pay before the Commissioner pursuant to N.Y.Educ.Law § 310. *See Board of Educ. v. Nyquist*, 48 N.Y.2d 97, 397 N.E.2d 365, 421 N.Y.S.2d 853 (1979). If the Commissioner denied her claim she could then have brought an Article 78 proceeding to review that decision. *See id.* New York law, however, does not require that she initially bring the claim before the Commissioner. *See Soucy v. Board of Educ.*, 51 A.D.2d 628, 629, 378 N.Y.S.2d 500, 503 (3d Dep't 1976).

challenge to the merits of the suspension itself. The majority asserts that in seeking suspension pay, rather than nominal damages, she necessarily argued, under *Carey v. Piphus*, 435 U.S. 247, 98 S.Ct. 1042, 55 L.Ed.2d 252 (1978), that the adverse action would not have occurred absent the due process violation. The majority then leaps to the conclusion that the adverse action that would not have occurred absent the violation is the suspension itself. This conclusion is baseless, I believe, even leaving aside the fact that *Carey* was decided almost two years after *Gargiul I* was commenced: the petition clearly states that the adverse action being challenged is not the suspension, but rather the withholding of Gargiul's salary. Since the due process claim is solely for suspension pay, there is simply no reason to hold *Soucy* inapplicable to *Gargiul I*.

Second, the majority contends that the Commissioner's decision on the merits of the suspension somehow gives *Gargiul I* the res judicata effect that it otherwise lacks. It may well be that Gargiul had to appeal the Commissioner's decision or lose the right to obtain judicial review of the administrative resolution of her suspension (although *Gargiul II* is somewhat unclear as to whether Gargiul could have obtained review had she joined the Commissioner). It may also be true that had Gargiul sought Article 78 review of the Commissioner's decision, she would have had to join that claim with *Gargiul I* since *Gargiul I* was brought after a final decision by the Commissioner. However, Gargiul was not *required* to seek judicial review of the Commissioner's decision. The most that *Gargiul II* held was that the Commissioner's unreviewed decision is final within the state administrative process but, as discussed *infra*, and as conceded by the majority, at n. 9, it could not bar a subsequent section 1983 suit. Under the majority's reasoning, even if *Gargiul I* contained only a statutory pay claim, and even if Gargiul brought no other state judicial proceedings,

this section 1983 suit is barred as long as the Commissioner acted before *Gargiul I* was commenced. The effect of this approach is to force any teacher in Gargiul's position either to forego the interim pay proceeding in order to preserve a civil rights action, or to join all his substantive claims with a claim for pay during suspension in an Article 78 proceeding, which is precisely the result that, as the majority is required to recognize, *Soucy* intended to avoid. It simply cannot be that the right to bring a non-preclusive interim pay proceeding pending resolution of the section 3020–a administrative process turns on whether the Commissioner has rendered a final decision in the section 310 proceeding.

If I am correct that *Gargiul I* does not bar this section 1983 action, we still must examine the preclusive effect of *Gargiul II*. I take note of the majority's disavowal of according preclusive effect to *Gargiul II*, at n. 7, and of the concession of appellee's counsel at oral argument that *Gargiul II* does *not* bar this suit.[2] I also take note of the fact that *Gargiul II* did not accord *Gargiul I* res judicata effect. The later decision did not even take cognizance of the earlier one. The court's reference in *Gargiul II* to the fact that "she may not relitigate the propriety of her suspension without pay in this CPLR article 78 proceeding," 69 A.D.2d at 986, 416 N.Y.S.2d at 120, obviously refers to the Commissioner's determination on suspension, rather than to *Gargiul I*.

Under New York law a dismissal not on the merits is not res judicata except for what is decided in the dismissal, *Peterson v. Troy*, 96 A.D.2d 856, 857, 465 N.Y.S.2d 771, 772 (2d Dep't 1983); *DeRonda v. Greater Amsterdam School District*, 91 A.D.2d 1088, 1089, 458 N.Y.S.2d 310, 311 (3d Dep't 1983). The *Gargiul II* court avoided the merits of the constitutional claim on two related grounds: failure to join the Commissioner in the second Article 78 proceeding and failure to appeal his

**2.** The Court: You're relying in other words on *Gargiul I*, and not on *Gargiul II*, for the preclusive effect?

Mr. Bell: That's correct, your Honor, because it was not necessary that the issue be addressed the second time in the *Gargiul II* proceeding.

decision. Specifically, the procedural failure to join a party in an Article 78 proceeding does not operate as a bar to another suit. *Schanbarger v. New York State Commissioner of Social Services*, 99 A.D.2d 621, 622, 472 N.Y.S.2d 175, 177 (3d Dep't 1984).

The court's refusal to consider Gargiul's constitutional claims for failure to appeal the Commissioner's decision, in my view, is just as clearly a decision not on the merits. Article 78 review of the Commissioner's decision is a judicial gloss on the Commissioner's statutorily established review powers. *See* N.Y.Educ.Law § 310 (McKinney 1969). During the relevant period, such decisions were "final and conclusive," although a court could review them if they were "purely arbitrary." *Baer v. Nyquist*, 34 N.Y.2d 291, 298, 313 N.E.2d 751, 755, 357 N.Y.S.2d 442, 447 (1974). The limited holding of the court in *Gargiul II* was that since the Commissioner's decision had not been appealed, it was final within the administrative review of Board of Education decisions. Thus, to reiterate, *Gargiul II* was not a decision on the merits of the constitutional claims.

Since neither *Gargiul I* nor *Gargiul II* would be res judicata in a section 1983 action, the only decision that could conceivably be advanced as having res judicata effect would be the Commissioner's decision. For a number of reasons, however, that decision should not be accorded such effect. First, *Migra* requires only that federal courts apply state res judicata law to state *court* decisions. Therefore, even if New York would give the Commissioner's decision preclusive effect, this court is not bound to do so. Second, even if quasi-judicial administrative proceedings can bar a subsequent section 1983 suit, as in one extremely limited instance we held they could, *see Zanghi v. Incorporated Village of Old Brookville*, 752 F.2d 42, 46 (2d Cir.1985); *but see Pettis Moving Co. v. Roberts*, 784 F.2d 439, 441 n. 4 (2d Cir.

1986); *Elliott v. University of Tennessee*, 766 F.2d 982 (6th Cir.), *cert. granted*, —— U.S. ——, 106 S.Ct. 522, 88 L.Ed.2d 455 (1985), the Commissioner's "round table discussion, ... [with its] procedural inadequacies, which include the inability to examine or cross-examine witnesses," *Gargiul*, 704 F.2d at 667, hardly rises to the level of a quasi-judicial proceeding which could bar a subsequent section 1983 action.

Finally, the fact that a court in an Article 78 proceeding subsequently refused to reconsider the Commissioner's decision does not give that decision the res judicata effect that it lacks standing alone. *Gargiul II* was simply a ruling that pursuant to section 310 the Commissioner's decision is final within the administrative process unless appealed and that the court would not reconsider the merits where plaintiff had failed to join the Commissioner in the second action and where she had earlier foregone an opportunity to exhaust her administrative appeals. Such exhaustion is clearly not a prerequisite to a section 1983 suit. *Patsy v. Florida Board of Regents*, 457 U.S. 496, 102 S.Ct. 2557, 73 L.Ed.2d 172 (1982); *Monroe v. Pape*, 365 U.S. 167, 183, 81 S.Ct. 473, 481, 5 L.Ed.2d 492 (1961). Since the Commissioner's decision would not bar a section 1983 suit and *Gargiul II* was a procedural ruling not on the merits, the New York courts would have entertained Gargiul's section 1983 claim for damages arising out of the violation of her constitutional rights. So should we.

The majority finds that New York res judicata law does not bar Gargiul's suit against the education officials in their individual capacities, but that a remand is unnecessary since these officials are entitled, as a matter of law, to a good-faith immunity defense. Following our remand, 739 F.2d 34, on the limited question of New York res judicata law, appellees did not raise this defense below, and the district court never ruled on it.[3] As the issues

---

3. Appellees did raise a defense of good faith immunity in their answer to the First Amended Complaint, Jan. 5, 1980, and in their Memorandum in Opposition to Motion for Summary

Judgment, filed Oct. 19, 1981. Judge Miner never addressed the immunity issue in denying plaintiff's motion for summary judgment, 525 F.Supp. 795 (N.D.N.Y.1981), or in his 1982 rul-

were not before us on this appeal, appellant had no opportunity to brief or argue the question. If appellees wished this court to consider the immunity issue, they should have raised it before the district court following our remand. The general rule of practice of this court is to refuse to consider issues not raised below, even if the new appellate claim is a purely legal question raised after a summary dismissal proceeding. *Schmidt v. Polish People's Republic,* 742 F.2d 67, 70 (2d Cir.1984); *Terkildsen v. Waters,* 481 F.2d 201, 204–05 (2d Cir.1973) (citing *Hormel v. Helvering,* 312 U.S. 552, 556, 61 S.Ct. 719, 721, 85 L.Ed. 1037 (1941)); *see also Singleton v. Wulff,* 428 U.S. 106, 120–21, 96 S.Ct. 2868, 2877, 49 L.Ed.2d 826 (1976). In *Singleton,* the Court noted that "there are circumstances in which a federal appellate court is justified in resolving an issue not passed on below," 428 U.S. at 121, 96 S.Ct. at 2877, and left that decision primarily to the discretion of the courts of appeals. The standard in this court is to consider new issues "only when necessary to avoid manifest injustice." *Schmidt,* 742 F.2d at 70. The majority points to no such

injustice here, nor to any other special circumstances other than the duration of this litigation.[4] The fact that the immunity defense was made in opposition to appellant's motion for summary judgment before the district court in 1981, or before a previous panel of this court, neither of which considered the question, does not make it ripe for consideration here following remand on the limited question of the res judicata effect of *Gargiul I* and *II,* especially where appellant rightfully did not brief the question. I can understand the majority's desire to bring this case to a close after eleven years, but I cannot agree that we should resolve the issue of qualified immunity at this point.[5]

The image that comes into mind when one thinks of Gargiul, whose simple little claim to suspension pay from an arbitrary school board has somehow now been snuffed out, is that of Laocoon and his sons; only the sea serpents have been replaced by the serpentine coils of section 1983 preclusion law.

Accordingly, I respectfully dissent.

---

ing that Gargiul failed to state a claim for relief. This court, in finding that Gargiul's constitutional rights were violated, 704 F.2d 661, also did not address the immunity question.

4. Both *Chris-Craft Industries, Inc. v. Piper Aircraft Corp.,* 516 F.2d 172, 186–87 (2d Cir.1975), *rev'd on other grounds,* 430 U.S. 1, 97 S.Ct. 926, 51 L.Ed.2d 124 (1977), and *Georgia-Pacific Corp. v. U.S. Plywood-Champion Papers Inc.,* 446 F.2d 295, 299 (2d Cir.), *cert. denied,* 404 U.S. 870, 92 S.Ct. 105, 30 L.Ed.2d 114 (1971), involved appellate redetermination of damages based on a complete record before the court. Neither decision supports resolving the immunity issue here without even affording the appellant an opportunity to brief it.

5. Having said that, I feel compelled to respond briefly to the majority's holding that a reasonable school board member would not have known that his action violated Gargiul's substantive due process right to be free of arbitrary official action, irrespective of my prior concurring opinion. As this court previously found, 704 F.2d 661, 668, Gargiul offered the Board two reasonable alternatives to examination by a male physician, both sanctioned by N.Y. Educ.Law § 913 (McKinney Supp.1986). No reasonable explanation was offered as to why these alternatives were rejected. The Board's behavior was the essence of arbitrariness. The

majority notes some changes in the law of privacy, but nothing that would make the school board's decision *arbitrary* in 1983 but not in 1975. Indeed, I seem to recall comments of the Court as to the unconstitutionality of "purely arbitrary" administrative action dating back at least to *Yick Wo v. Hopkins,* 118 U.S. 356, 367–68, 6 S.Ct. 1064, 1069–70, 30 L.Ed. 220 (1886). Even assuming that Judge Newman is correct that "considerations of privacy" influenced the majority in our prior opinion, I fail to see how that made the Board's 1975 decision any less arbitrary. The Supreme Court had already recognized a right to privacy in the physician-patient relationship. *See Roe v. Wade,* 410 U.S. 113, 163–64, 93 S.Ct. 705, 731–32, 35 L.Ed.2d 147 (1974); *Griswold v. Connecticut,* 381 U.S. 479, 482, 85 S.Ct. 1678, 1680, 14 L.Ed.2d 510 (1965). That such privacy rights were at least implicated in the Board's decision makes that decision, if anything, even more unreasonable than had there been no constitutional recognition of the patient-physician relationship. Perhaps significant changes in the law of arbitrary state action occurred between 1975 and 1983, even if I am not aware of them, but I would leave initial resolution of this question to the district court after both parties have had an opportunity to address the question.