64 F.3d 810
 10 IER Cases 1811
 Mark KOMLOSI, Plaintiff-Appellee,
v.
The NEW YORK STATE OFFICE OF MENTAL RETARDATION AND
DEVELOPMENTAL DISABILITIES, Sheldon Kramer, Louis
Ganim, John Sabatos, Robert Witkowsky,
Kenneth Brodsky, and James
Brennan, Defendants-Appellants,
Arthur Y. Webb, Elin M. Howe, Ivan Canuteson, George Young,
Arthur Fogel, Melanie Fudenberg, William Guzman, Walter
DeLeone, Charles DeYoung, The City of New York, The Police
Department of the City of New York, Salvatore Catalfumo,
individually and in his official capacity as a detective in
the NYPD, Robert Merz, individually and in his official
capacity as a detective in the NYPD, Bruce D. Milau,
individually and in his official capacity as a detective in
the NYPD, P. Kehoe, individually and in his official
capacity as a detective in the NYPD, Christoper Jackson,
individually and in his official capacity as a detective in
the NYPD, Joy E. Garza, individually and in her official
capacity as a police officer in the NYPD, "J. McSeoun", a
fictitious name intended to connote the identity of the NYPD
official who supervised and directed the above-referenced
detectives and police officers in their investigation,
arrest, imprisonment, and prosecution of the Plaintiff,
individually and in his official capacity as a lieutenant in
the NYPD, "John Does" 1-10, the latter being fictitious
names identified to connote certain persons whose identities
are not yet known to plaintiff, and Robert Lamb,
individually and in his official capacity as an assistant
district attorney in the Office of the District Attorney for
the County of Kings, Defendants.
 No. 1595, Docket 94-7967.
 United States Court of Appeals,
 Second Circuit.
 Argued May 16, 1995.
Decided Sept. 7, 1995.
 
 Vincent Leong, Assistant Attorney General of the State of New York, New York City (Dennis C. Vacco, Attorney General of the State of New York, of counsel), for defendants-appellants.
 Will Levins, New York City (Peter A. Lerner, Ballon Stoll Bader & Nadler, P.C., of counsel), for plaintiff-appellee.
 Before: ALTIMARI and MAHONEY,* Circuit Judges.
 MAHONEY, Circuit Judge:
 
 
 1
 This interlocutory appeal is taken from an order entered August 24, 1994 in the United States District Court for the Southern District of New York, John F. Keenan, Judge, insofar as it denied summary judgment to defendants-appellants Sheldon Kramer, Louis Ganim, John Sabatos, Robert Witkowsky, Kenneth Brodsky, and James Brennan (the "State defendants") based upon the defense of qualified immunity, and denied summary judgment with respect to prospective relief to the New York State Office of Mental Retardation and Developmental Disabilities (the "OMRDD") based upon Eleventh Amendment immunity.
 
 
 2
 Plaintiff-appellee Mark Komlosi, a former psychologist at OMRDD, commenced this litigation pursuant to 42 U.S.C. Sec. 1983 against, among others, OMRDD and the State defendants in their individual capacities, asserting violations of his procedural and substantive due process rights under the Fourteenth Amendment. Specifically, Komlosi alleged that OMRDD and certain of the State defendants deprived him of procedural and substantive due process by suspending him without pay from his position at OMRDD following allegations that he sexually abused a developmentally disabled client. Komlosi further claims that OMRDD and certain of the State defendants deprived him of procedural due process by failing to reinstate him promptly to his position at OMRDD following the state's dismissal of criminal charges against him. Komlosi also alleged that statements made to the press by one of the State defendants, Louis Ganim, injured Komlosi's reputation and prevented him from obtaining employment and unemployment compensation benefits in violation of procedural due process. Komlosi seeks reinstatement to his position as a psychologist at OMRDD, compensatory and punitive damages, and attorney fees pursuant to 42 U.S.C. Sec. 1988.
 
 
 3
 OMRDD and the State defendants moved for summary judgment pursuant to Fed.R.Civ.P. 56. In an opinion and order dated August 23, 1994, the district court ruled that OMRDD, as a state entity, was immune from suit under the Eleventh Amendment for damages, but that the Eleventh Amendment did not preclude Komlosi from suing OMRDD to recover prospective relief, such as reinstatement to his position as a psychologist, as well as attorney fees. The district court also denied summary judgment to the State defendants, which they sought by invoking the defense of qualified immunity.[1] See Komlosi v. New York State Office of Mental Retardation & Developmental Disabilities, No. 88 Civ. 1792 (JFK), slip op., 1994 WL 465993 (S.D.N.Y. Aug. 23, 1994).
 
 
 4
 For the reasons that follow, we conclude that OMRDD should have been granted summary judgment as to prospective relief and attorney fees, as well as damages, and we modify the judgment of the district court accordingly. We further conclude that each of the State defendants is entitled to summary judgment based upon the defense of qualified immunity, and accordingly reverse the order of the district court insofar as it denied summary judgment to the State defendants.
 
 Background
 
 5
 Komlosi held a permanent civil service appointment to OMRDD as a "Psychologist II" and was stationed at the Williamsburg Rehabilitation and Training Center ("WRTC"), an OMRDD facility. WRTC, a satellite office of the Brooklyn Developmental Center ("BDC"), served approximately forty-six developmentally disabled individuals, providing them care, education, treatment, and rehabilitation.
 
 
 6
 On March 11, 1985, Mark Rosenberg, a disabled client, informed defendant Walter DeLeone, a mental therapist who supervised the night shift, and other WRTC staff members that he had been sexually abused by Komlosi. Rosenberg was accompanied by Fudenberg, a WRTC mental hygiene aide, when he made the initial complaint. Prior to Rosenberg's complaint, other clients had accused Komlosi of sexual misconduct, but investigations had determined that these charges were unsubstantiated.
 
 
 7
 For instance, in August 1984, Komlosi was placed on administrative leave with full pay pending an investigation of charges that he had sexually abused a female WRTC client. Komlosi was later reinstated, however, following the client's admission to investigators that Fudenberg had enticed her to falsely charge Komlosi with sexual misconduct. On a separate occasion, another client informed a WRTC staff member that he had been sexually abused by Komlosi. Soon thereafter, that client too confessed that the incident had not occurred, and that Fudenberg had induced him to falsely accuse Komlosi. Additionally, Fudenberg herself complained to defendant Arthur Fogel, the WRTC chief of service, about other incidents in which Komlosi had allegedly abused WRTC clients. Again, investigations determined that these incidents had not occurred.
 
 
 8
 DeLeone nonetheless found Rosenberg's description of abuse by Komlosi to be sincere and unprompted. And despite Rosenberg's known propensity to lie and strong interest in sexual matters, DeLeone concluded that Rosenberg might be telling the truth. Consequently, DeLeone prepared a report of the incident and forwarded it to Fogel. On March 12, 1985, Fogel listened to Rosenberg's account of the incident, and he too concluded that Rosenberg appeared sincere. Fogel in turn notified defendants-appellants James Brennan and Kenneth Brodsky, deputy directors of BDC, and John Sabatos, the new BDC director, about the incident, and an investigation was immediately commenced.
 
 
 9
 On March 13, 1985, OMRDD investigator and defendant George Young interviewed Rosenberg. Rosenberg initially told Young that the incident had not occurred and that Fudenberg had compelled him to accuse Komlosi. However, Rosenberg immediately thereafter restated his accusation that Komlosi had forced him to engage in sex, recanting his earlier statement that Fudenberg had forced him to lie. Young also interviewed Komlosi, who denied the allegations.
 
 
 10
 On March 25, 1985, Sabatos[2] provided Komlosi with written notice that he was being charged with inducing Rosenberg to engage in mutual oral sex with him, and that he was being suspended without pay pending a final resolution of the charges against him because Sabatos had "determined that [Komlosi was] a potential danger to persons or property, or that [his] continued presence [at WRTC] would severely interfere with ongoing operations." The applicable collective bargaining agreement (the "CBA") authorized suspension of an employee without pay in the "discretion" of the appointing authority on this basis, or when an employee is "charged with the commission of a crime."
 
 
 11
 Komlosi, through his union representative, made a written demand for arbitration of the charge against him, as authorized by the CBA. Ultimately, however, no arbitration was ever held in view of the criminal charges that were subsequently brought against Komlosi. Komlosi's union representative in this matter, Mark Barberian, stated in an affidavit that it is standard practice to hold an arbitration hearing in abeyance on consent when criminal charges are brought with respect to the subject matter of the arbitration, and "[u]pon information and belief" that this procedure had been followed in Komlosi's arbitration. Komlosi contests this assertion in an affidavit which states that he never consented to a deferral of his arbitration hearing.
 
 
 12
 On May 2, 1985, Komlosi was arrested on the charge that he had sexually abused Rosenberg. On May 10, 1985, Komlosi was indicted by a grand jury on two counts of committing deviate sexual intercourse. Following the indictment, defendant Louis Ganim, OMRDD's Director of Public Affairs, spoke to reporters about the incident. A resulting report in the Staten Island Advance on May 10, 1985 included the following passages:
 
 
 13
 State officials say they are trying to fire a psychologist indicted for sexually abusing a retarded man at [a] Brooklyn group home.
 
 
 14
 Mark Komlosi, 44, of Manhattan, was indicted on two counts of first-degree sodomy Thursday for forcibly sodomizing a 37 year-old male patient twice....
 
 
 15
 ....
 
 
 16
 Komlosi was placed on administrative leave after the patient reported the incident last month. Komlosi was suspended without pay March 25 and the state is taking steps to fire him [emphasis added], said Louis Gamin, a spokesman for the office in Albany.
 
 
 17
 Komlosi's criminal trial commenced in May 1986. After initially testifying against Komlosi, Rosenberg admitted to Fogel, and then to prosecutors, that his accusations against Komlosi were untrue and that Fudenberg had forced him to lie. As a result, on May 29, 1986, the trial court dismissed the indictment.
 
 
 18
 Thereafter, on June 26, 1986, Komlosi's union representative wrote defendant-appellant Sheldon Kramer at OMRDD's Office of Employee Relations demanding that all disciplinary charges against Komlosi be withdrawn and that Komlosi be immediately reinstated. A second request for immediate reinstatement was made upon OMRDD on August 13, 1986. By telegram dated August 27, 1986, BDC advised Komlosi that he should report for duty to BDC on September 2, 1986. Komlosi did not report on that date. By letter dated September 15, 1986, BDC advised Komlosi that all disciplinary charges were withdrawn and that he should report to BDC's personnel office the next morning to discuss his work assignment. Komlosi replied by letter dated September 15, 1986, however, that he was resigning his position as of September 16, 1986 because of a "health problem."
 
 
 19
 In December 1986, BDC paid Komlosi full back pay for the eighteen months (March 1985--September 1986) of his suspension without pay. By letter dated September 9, 1987, Komlosi requested that he be reinstated as a "Psychologist II," or in an alternative position or vacancy at BDC. BDC responded that it was not in a position to reinstate him at that time.
 
 
 20
 Komlosi commenced this lawsuit pursuant to 42 U.S.C. Sec. 1983 on March 15, 1988. In a memorandum opinion and order dated March 12, 1990, the district court dismissed the complaint as to Robert Lamb, an assistant district attorney in the office of the District Attorney for Kings County. In the opinion and order from which this appeal is taken, the district court granted summary judgment to all defendants except OMRDD, the State defendants, and Fudenberg, as previously summarized.
 
 
 21
 This appeal followed.
 
 Discussion
 
 22
 On appeal, OMRDD contends that, contrary to the ruling of the district court, see Komlosi, slip op. at 14, OMRDD was entitled to summary judgment on its claim of immunity from prospective relief and attorney fees, as well as damages. Kramer and Witkowsky argue that, contrary to the ruling of the district court, see id. at 20, they are entitled to summary judgment on their defense of qualified immunity to Komlosi's claim that the delay involved in offering reinstatement to him after his criminal trail offended procedural due process. Sabatos, Brodsky, and Brennan maintain that, contrary to the ruling of the district court, see id. at 26-27, they are entitled to summary judgment on their defense of qualified immunity to Komlosi's claim that his suspension without pay offended substantive due process. Ganim argues that, contrary to the ruling of the district court, see id. at 20-21, he is entitled to summary judgment on his defense of qualified immunity to Komlosi's claim that Ganim's May 10, 1985 statements to the press concerning Komlosi and resulting injury to Komlosi offended procedural due process.
 
 
 23
 As previously stated, we agree with all these contentions. We proceed to address these issues in turn.
 
 
 24
 A. Section 1983 Liability of OMRDD.
 
 
 25
 The district court held that pursuant to the Eleventh Amendment, OMRDD, as a state agency, is immune from suit for compensatory damages, but that the Eleventh Amendment "does not bar claims for prospective relief such as [Komlosi's] request for reinstatement to his position with OMRDD as a 'Psychologist II' " against the state. Komlosi, slip op. at 14 (citing Dwyer v. Regan, 777 F.2d 825, 835-36 (2d Cir.1985), modified, 793 F.2d 457 (2d Cir.1986)). Pursuant to the "collateral order" doctrine articulated in Cohen v. Beneficial Indus. Loan Corp., 337 U.S. 541, 546-47, 69 S.Ct. 1221, 1225-26, 93 L.Ed. 1528 (1949), the Supreme Court has expressly "h[e]ld that States and state entities that claim to be 'arms of the State' may take advantage of the collateral order doctrine to appeal a district court order denying a claim of Eleventh Amendment immunity." Puerto Rico Aqueduct & Sewer Auth. v. Metcalf & Eddy, --- U.S. ----, ----, 113 S.Ct. 684, 689, 121 L.Ed.2d 605 (1993); see also Dube v. State Univ., 900 F.2d 587, 594 (2d Cir.1990) (such an appeal may be taken if issue can be decided as a question of law) (collecting cases), cert. denied, 501 U.S. 1211, 111 S.Ct. 2814, 115 L.Ed.2d 986 (1991). We conclude that this court has jurisdiction over the appeal of this issue, which presents a clear issue of law.
 
 
 26
 Turning to the merits of the issue, we agree with OMRDD that the district court erred in denying it summary judgment in full. It is now settled that a state cannot be sued under Sec. 1983, Will v. Michigan Dept. of Police, 491 U.S. 58, 71, 109 S.Ct. 2304, 2312, 105 L.Ed.2d 45 (1989), and that this rule applies "to States or governmental entities that are considered 'arms of the state' for Eleventh Amendment purposes."[3] Id. at 70, 109 S.Ct. at 2312; see also Dube, 900 F.2d at 594-95. For Eleventh Amendment purposes, OMRDD is to be considered an arm of New York State. See N.Y.Mental Hyg.Law Sec. 13.01. Accordingly, it cannot be sued under Sec. 1983, as Komlosi conceded at the oral argument of this appeal. It follows that OMRDD is entitled to summary judgment dismissing Komlosi's claim as to prospective relief and attorney fees as well as damages.[4]
 
 
 27
 B. Qualified Immunity.
 
 
 28
 The doctrine of qualified immunity protects government officials from personal liability if their conduct either " 'did not violate "clearly established rights" of which a reasonable person would have known, or ... it was "objectively reasonable" to believe that [their] acts did not violate these clearly established rights.' " Soares v. Connecticut, 8 F.3d 917, 920 (2d Cir.1993) (quoting Finnegan v. Fountain, 915 F.2d 817, 823 (2d Cir.1990)). "[A] district court's denial of a claim of qualified immunity, to the extent that it turns on an issue of law, is an appealable 'final decision' within the meaning of 28 U.S.C. Sec. 1291 notwithstanding the absence of a final judgment." Mitchell v. Forsyth, 472 U.S. 511, 530, 105 S.Ct. 2806, 2817, 86 L.Ed.2d 411 (1985). However, if the qualified immunity defense presents "disputed factual issues, or ... mixed questions of fact and law, an immediate appeal will not lie, and review of the qualified immunity determination will have to await the district court's resolution of the factual questions." DiMarco v. Rome Hosp., 952 F.2d 661, 665 (2d Cir.1992); see also Johnson v. Jones, --- U.S. ----, ----, 115 S.Ct. 2151, 2159, 132 L.Ed.2d 238 (1995) (holding that "a defendant, entitled to invoke a qualified-immunity defense, may not appeal a district court's summary judgment order insofar as that order determines whether or not the pretrial record sets forth a 'genuine' issue of fact for trial"). We now apply these principles to the qualified immunity issues presented by this appeal.
 
 
 29
 1. Denial of Summary Judgment to Kramer and Witkowsky.
 
 
 30
 Even if all facts are resolved in favor of Komlosi, Kramer and Witkowsky's delay in reinstating Komlosi after the criminal charges were dismissed does not implicate a "clearly established right," especially in view of the fact that Komlosi was ultimately provided back pay for this period of delay. See Weg v. Macchiarola, 729 F.Supp. 328, 337 (S.D.N.Y.1990). Whether qualified immunity exists in a given context depends upon whether an official's actions were objectively reasonable "under the legal rules prevailing at the time the actions were taken." Dobosz v. Walsh, 892 F.2d 1135, 1140 (2d Cir.1989) (citing Anderson v. Creighton, 483 U.S. 635, 639, 107 S.Ct. 3034, 3038, 97 L.Ed.2d 523 (1987)). It cannot be said that "in light of pre-existing law the unlawfulness [of Kramer and Witkowsky's conduct was] apparent." Anderson, 483 U.S. at 640, 107 S.Ct. at 3039. Indeed, Komlosi has not cited any case demonstrating that their conduct constituted a deprivation of a clearly established right. We therefore conclude that defendants Kramer and Witkowsky should have been granted summary judgment on their defense of qualified immunity.
 
 
 31
 2. Denial of Summary Judgment to Sabatos, Brodsky, and Brennan.
 
 
 32
 The district court decided that Komlosi did not have a claim for the deprivation of procedural due process with respect to his suspension without pay because he was accorded a presuspension interview at which he was enabled to state his position regarding the suspension and the underlying charge, and the postsuspension arbitration hearing was deferred by mutual consent. See Komlosi, slip op. at 15-20. In this respect, the district court stated that Komlosi's "insistence" that he did not agree to the deferral "cannot and should not create a material issue of disputed fact, given his representative's recollection that there was a stay [and Komlosi's] fail[ure] to produce any evidence that reflects his alleged continuous demands for an immediate and timely arbitration hearing." Id. at 18. The court added that in any event, it was reasonable for Sabatos, Brodsky, and Brennan to stay Komlosi's administrative hearing pending the criminal trial. See id. at 18-20.
 
 
 33
 The district court also ruled, however, that a material issue of fact existed as to whether Sabatos, Brodsky, and Brennan had acted arbitrarily and capriciously in suspending Komlosi without pay, thereby denying him substantive due process. See id. at 21-22, 26-27. Citing Newman v. Massachusetts, 884 F.2d 19, 25 (1st Cir.1989), cert. denied, 493 U.S. 1078, 110 S.Ct. 1132, 107 L.Ed.2d 1037 (1990), and Gargiul v. Tompkins, 704 F.2d 661, 668 (2d Cir.1983), vacated, 465 U.S. 1016, 104 S.Ct. 1263, 79 L.Ed.2d 670 (1984), on remand, 739 F.2d 34 (2d Cir.1984), the district court stated that "a lengthy suspension without pay invokes substantive due process protection." Komlosi, slip op. at 22. However, Newman, a First Circuit decision, is not controlling in this circuit, and in any event was decided long after Komlosi's suspension. Thus, the defendants could not have known that their conduct violated clearly established law on the basis of Newman.
 
 
 34
 Gargiul also provides an insufficient basis to conclude that Sabatos, Brodsky, and Brennan should have known that their suspension of Komlosi without pay constituted a violation of a clearly established right. In Gargiul, a tenured female teacher was suspended without pay when she refused to be examined by the school's male physician, even though she had agreed to be examined by a female physician of the school's choosing. The teacher asserted that it was against her "creed" to be examined by a male physician. 704 F.2d at 663. In addressing her claim, we stated that: "If Gargiul's lengthy suspension without pay resulted from an arbitrary or capricious exercise of the Board's power, her due process rights were violated." Gargiul, 704 F.2d at 668. The Supreme Court vacated the Gargiul decision, however, on other grounds, see Tompkins v. Gargiul, 465 U.S. 1016, 104 S.Ct. 1263, 79 L.Ed.2d 670 (1984), and Gargiul ultimately failed to prevail in her lawsuit because a prior state proceeding was deemed to bar all her claims under the doctrine of res judicata. See Gargiul v. Tompkins, 739 F.2d 34 (2d Cir.1984); id., 790 F.2d 265 (2d Cir.1986).
 
 
 35
 Thus, at the time when Komlosi was suspended without pay in March 1985, Gargiul was a decision of this court that had been vacated by the Supreme Court. Further, even assuming the continued vitality of Gargiul, it was distinguishable in important respects from Komlosi's situation. We determined in Gargiul that: "In view of Gargiul's offer to go at her own expense to any female physician selected by the Board [of Education], rather than to submit to a physical examination by the school district physician, who was male, the Board's actions with respect to Gargiul must be considered arbitrary." 704 F.2d at 669. Here, by contrast, the CBA explicitly authorized Komlosi's suspension without pay, at the "discretion" of the appointing authority, on precisely the grounds for which he was suspended, and his indictment shortly thereafter provided another clear ground for his suspension without pay under the CBA. Finally, Komlosi was ultimately provided with back pay for the entire period of his suspension, whereas Gargiul was never given any back pay. See Gargiul, 704 F.2d at 664; id., 790 F.2d at 267.
 
 
 36
 We conclude that Sabatos, Brodsky, and Brennan did not violate any clearly established right of Komlosi's by suspending him without pay, and should therefore have been accorded summary judgment on their claim of qualified immunity.
 
 
 37
 3. Denial of Summary Judgment as to Ganim.
 
 
 38
 The district court also denied summary judgment to Ganim. Komlosi claims that Ganim's comments to the press deprived him of a liberty interest. In Paul v. Davis, 424 U.S. 693, 96 S.Ct. 1155, 47 L.Ed.2d 405 (1976), the Supreme Court recognized that while damage to reputation alone is insufficient to establish a claim for harm to a liberty interest, a cognizable claim will lie if a plaintiff can show loss of reputation plus some serious additional harm, such as loss of employment, as a result of defamatory remarks by a government official. See id. at 710, 96 S.Ct. at 1165. For instance, a liberty interest is implicated when a plaintiff can show both harm to his reputation and serious damage to his prospects for future employment in his profession, see Huntley v. Community Sch. Bd., 543 F.2d 979, 985 (2d Cir.1976) ("Having discharged Huntley with a public statement of these charges, it is unlikely that Huntley would ever have a chance to obtain another supervisory position in the public schools or elsewhere."), cert. denied, 430 U.S. 929, 97 S.Ct. 1547, 51 L.Ed.2d 773 (1977), or defamation in connection with a termination of public employment. See Goetz v. Windsor Central Sch. Dist., 698 F.2d 606, 610 (2d Cir.1983).
 
 
 39
 In this case, Komlosi has asserted in an affidavit that Ganim's comments to the press both damaged Komlosi's reputation and prevented him from obtaining unemployment benefits or securing employment. A material issue of fact is thus presented as to the additional harm required by Paul to establish a Sec. 1983 claim, although a suspension without pay followed by an offer of reinstatement and provision of back pay would not suffice, standing alone, for this purpose. See Dobosz, 892 F.2d at 1140-41 (collecting cases).
 
 
 40
 The district court found that material issues of fact existed regarding whether Gamin's statement to the press that "the state is taking steps to fire [Komlosi]" was true, and whether the statement actually caused damage to Komlosi's reputation. Komlosi, slip op. at 20-21. We agree. Ganim contends that his statement was accurate, but it can be read to provide a prejudgment that Komlosi would not be cleared as a result of administrative or criminal proceedings, rather than a posture of watchful waiting as to the outcome. It may be the case, as Ganim contends, that any stigma and damage that was inflicted upon Komlosi resulted from the indictment and District Attorney Holtzman's comments about Komlosi, rather than from Ganim's statement, but this would be a matter for trial, not summary judgment.
 
 
 41
 We nonetheless conclude that Ganim was entitled to summary judgment. Assuming that his statement to the press was inaccurate, defamatory, and caused independent harm to Komlosi beyond damage to his reputation, no due process violation occurred because Komlosi was offered the opportunity for a "name-clearing hearing." Kelly Kare, Ltd. v. O'Rourke, 930 F.2d 170, 177 (2d Cir.), cert. denied, 502 U.S. 907, 112 S.Ct. 300, 116 L.Ed.2d 244 (1991); see also Board of Regents of State Colleges v. Roth, 408 U.S. 564, 573 & n. 12, 92 S.Ct. 2701, 2707 & n. 12, 33 L.Ed.2d 548 (1972) (person defamed is entitled to notice and an opportunity to be heard "to clear his name"); Quinn v. Syracuse Model Neighborhood Corp., 613 F.2d 438, 446 (2d Cir.1980) (person defamed is entitled "to 'clear his name' ") (quoting Roth, 408 U.S. at 573 n. 12, 92 S.Ct. at 2707 n. 12). The deferred arbitration hearing would have afforded Komlosi that opportunity, but the district court concluded that Komlosi raised no "material issue of disputed fact" regarding his waiver of that hearing during the pendency of his criminal trial. Komlosi, slip op. at 18. We agree, and accordingly conclude that the opportunity for an arbitration hearing (waived in favor of the criminal trial at which Komlosi was vindicated) provided the "name-clearing hearing" required to avoid a due process violation.
 
 Conclusion
 
 42
 The judgment of the district court is modified to grant summary judgment to OMRDD with respect to all of Komlosi's claims for relief, and reversed as to its denial of summary judgment to Kramer, Ganim, Sabatos, Witkowsky, Brodsky, and Brennan. The case is remanded for further proceedings not inconsistent with this opinion.
 
 
 
 *
 The Hon. Wilfred Feinberg recused himself from this matter after the oral argument of the appeal, which is decided by the remaining members of the panel pursuant to 2d Cir.R. Sec. 0.14(b)
 
 
 [1]
 The district court also denied summary judgment to defendant Melanie Fudenberg, who asserted the defense of qualified immunity. This aspect of the district court's ruling is not challenged on appeal. The district court's dismissal of the complaint as to all other defendants named in Komlosi's complaint is also not challenged on this appeal
 
 
 [2]
 Only Sabatos, the director of BDC, had the authority to hire, fire, or suspend a WRTC employee
 
 
 [3]
 Will is premised upon a statutory interpretation of Sec. 1983, rather than a determination of Eleventh Amendment immunity. See Hilton v. South Carolina Pub. Rys. Comm'n, 502 U.S. 197, 205, 112 S.Ct. 560, 565, 116 L.Ed.2d 560 (1991) (Eleventh Amendment treated as a "relevant consideration" in Will ); Hafer v. Melo, 502 U.S. 21, 30, 112 S.Ct. 358, 364, 116 L.Ed.2d 301 (1991) ("Most certainly, Will 's holding does not rest directly on the Eleventh Amendment.")
 
 
 [4]
 Komlosi's brief on appeal requests that if OMRDD is dismissed from the case, Komlosi's amended complaint should be deemed further amended to assert claims against the individual defendants in their official capacities for reinstatement and a reasonable attorney fee. See Hafer, 502 U.S. at 24, 112 S.Ct. at 361; Will, 491 U.S. at 71 n. 10, 109 S.Ct. at 2312 n. 10. Defendants-appellants respond that we should "dismiss the claim against OMRDD and reverse with prejudice to any application by [Komlosi] to so amend the amended complaint." We decline to adopt either position, and leave the matter for decision by the district court in the event Komlosi seeks to amend his amended complaint in this respect