MEMORANDUM AND ORDER
 

 PRESKA, District Judge:
 

 Plaintiff Albert Greenwood, M.D. (“Greenwood”) brings this action pursuant to 42 U.S.C. § 1983 and pendent state law claims. Defendants have moved under Rule 56 of the Federal Rules of Civil Procedure for summary judgment on Greenwood’s Section 1983 claims. Greenwood opposes this motion, arguing that genuine and material factual issues preclude summary judgment. For the following reasons, defendants’ motion is granted.
 

 BACKGROUND
 

 Greenwood began working for defendant New York State Office of Mental Health (“OMH”) as a staff psychiatrist in November 1977. (Plaintiffs Affidavit in Opposition to Motion for Summary Judgment (“PLAff.”) ¶ 6.) Specifically, he worked for defendant Manhattan Psychiatric Center (“MPC”), a mental health institution maintained and operated by OMH for New York County.
 
 (Id.)
 
 In November 1978, OMH permanently appointed Greenwood to the title of Psychiatrist II under New York State Civil Service Law, Rules, and Regulations.
 
 (Id.
 
 ¶ 7.)
 

 Upon beginning at MPC, Greenwood became a member of the MPC Medical Staff Organization (“MSO”), an entity which the Joint Commission for the Accreditation of Hospitals (“JCAH”) requires every hospital to maintain for the purpose of advising hospital administration in matters involving the quality of patient care.
 
 (Id.
 
 ¶ 9.) The MSO and hospital administration operated according to the MPC By-laws, Rules and Regulations of the Medical Staff (“Medical Staff Bylaws”).
 
 (Id.
 
 ¶ 10.)
 

 The MSO was comprised of various subcommittees. One of these subcommittees— the Credentials Committee — was responsible for assuring the quality of the medical staff.
 
 (Id.
 
 ¶ 11.) It reviewed the professional education, training, skills, experience, and practice of the members of the medical staff and made recommendations to MPC’s Executive Director regarding the level of clinical privileges to be accorded to each physician.
 
 (Id.)
 
 In fulfilling its responsibilities, the Credentials Committee was governed by the policies and procedures, set forth in the MPC Credentials Committee Policy and Procedure Manual (“Credentials Manual”).
 
 (Id.
 
 ¶ 13.)
 

 During November and December 1981, the Credentials Committee conducted an investigation into the deaths of four patients from Greenwood’s ward at MPC. (Defendants’ Amended Statement Pursuant to Civil Rule 3(g) (“Def. 3(g)”) ¶¶ 23, 35; PLAff. ¶ 127.) In a memorandum dated December 16, 1981,
 
 *1063
 
 the Credentials Committee concluded that it was “unable to formulate a standard of care so low as to tolerate the practices followed [by Greenwood]” and recommended that “Dr. Greenwood’s privileges be reduced to a level appropriate for psychiatric fellows.” (PlAff., Ex. C.) In a memorandum dated December 18, 1981, defendant Gabriel Koz (“Koz”), Director of MPC at that time, adopted the Credentials Committee’s recommendation and suspended Greenwood’s clinical privileges.
 
 (Id.
 
 ¶ 133, Ex. E.) On December 21, 1981, in accordance with the Credential Committee’s report, Greenwood was reassigned to MPC’s Psychiatric Residency Training Unit.
 
 (Id.
 
 ¶ 137.) On January 12, 1982, Greenwood submitted his notice of appeal of the revocation of his clinical privileges to Koz.
 
 (Id.
 
 ¶ 138, Ex. F.) Koz denied Greenwood’s appeal in a memorandum dated January 19,1982.
 
 (Id.
 
 ¶ 139, Ex. G.)
 

 On April 19, 1982, Koz served Greenwood with a notice of discipline seeking to terminate Greenwood’s employment from MPC, primarily complaining of Greenwood’s negligence in connection with one of the patient deaths resulting in the loss of Greenwood’s clinical privileges. (Plaintiffs Counter-Statement to the Defendant’s Amended Rule 3(g) Statement (“PL 3(g)”) ¶ 119.) The parties engaged in years of arbitration and, in early 1989, Greenwood was reinstated to MPC, albeit without clinical privileges.
 
 (Id.
 
 ¶¶ 129, 130.) Next, on September 7, 1989, defendant Michael Ford (“Ford”), who replaced Koz as MPC’s Director, brought another disciplinary proceeding against Greenwood, seeking termination because of Greenwood’s refusal to accept a job assignment.
 
 (Id.
 
 ¶ 134.) Greenwood was terminated pursuant to this second arbitration. (Plaintiffs Memorandum of Law in Opposition to Motion for Summary Judgment (“Opp.Memo.”) at 15.)
 

 Greenwood filed the instant action under 42 U.S.C. § 1983 and pendent state law theories. He alleges that defendants “engaged in a continuous course of conspiratorial conduct, motivated by malice, evil intent or a reckless or callous disregard or indifference to plaintiffs federally protected rights.” (Second Amended Complaint (“Am.Compl.”) at 1-2.) He complains that all of the allegations against him and resulting actions taken by defendants were a contrived effort to rid him from MPC. Specifically, he complains that defendants deprived him of a property interest in his clinical privileges without due process of law, and that “defendants’ dissemination of the stigmatizing information contained in their fabricated ‘Credentials Committee’ report effectively rendered plaintiff unemployable” and, therefore, deprived him of his liberty interest in the free pursuit of his chosen occupation as a psychiatrist without due process of law. (Opp.Memo. at 26.)
 

 As for defendants New York State, OMH, and MPC (collectively, “state defendants”), Greenwood seeks an injunction directing them to reinstate his clinical privileges to practice at MPC. (Am.Compl. ¶ 78.) As for the other defendants, all of whom are employees (mostly physicians) of OMH or MPC (collectively, “individual defendants”), Greenwood sued them in their individual capacities seeking compensatory damages of $10 million and punitive damages of $10 million per claim.
 
 (Id.
 
 ¶¶79, 82, 85, 88.) Defendants have moved for summary judgment, relying on,
 
 inter alia,
 
 the Eleventh Amendment for state defendants and the doctrine of qualified immunity for individual defendants. Their motion is granted.
 

 DISCUSSION
 

 I.
 
 Summary Judgment Standard
 

 “A motion for summary judgment may not be granted unless the court determines that there is no genuine issue of material fact to be tried and that the facts as to which there is no such issue warrant judgment for the moving party as a matter of law.”
 
 Chambers v. TRM Copy Centers Corp.,
 
 43 F.3d 29, 36 (2d Cir.1994);
 
 see
 
 Fed.R.Civ.P. 56(c).
 
 See generally Celotex Corp. v. Catrett,
 
 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986);
 
 Anderson v. Liberty Lobby, Inc.,
 
 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986);
 
 Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,
 
 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). An issue of fact is genuine when “a reasonable jury could return a verdict for the nonmoving party,” and facts are material to the outcome of the particular
 
 *1064
 
 litigation if the substantive law at issue so renders them.
 
 Anderson,
 
 477 U.S. at 248, 106 S.Ct. at 2510.
 

 The burden of establishing that no genuine factual dispute exists rests on the party seeking summary judgment.
 
 Chambers,
 
 43 F.3d at 36. “In moving for summary judgment against a party who will bear the ultimate burden of proof at trial,” however, “the movant’s burden will be satisfied if he can point to an absence of evidence to support an essential element of the nonmoving party’s claim.”
 
 Goenaga v. March of Dimes Birth Defects Found.,
 
 51 F.3d 14, 18 (2d Cir.1995);
 
 accord Gallo v. Prudential Residential Servs., Ltd. Partnership,
 
 22 F.3d 1219, 1223-24 (2d Cir.1994) (“[T]he moving party may obtain summary judgment by showing that little or no evidence may be found in support of the nonmoving party’s case.”). The moving party, in other words, does not bear the burden of disproving an essential element of the nonmoving party’s claim.
 

 If the moving party meets its burden, the burden shifts to the nonmoving party to come forward with “specific facts showing that there is a genuine issue for trial.” Fed. R.Civ.P. 56(e);
 
 accord Rexnord Holdings, Inc. v. Bidermann,
 
 21 F.3d 522, 525-26 (2d Cir.1994). The nonmoving party must “do more than simply show that there is some metaphysical doubt as to the material facts.”
 
 Matsushita,
 
 475 U.S. at 586, 106 S.Ct. at 1355-56. Instead, the nonmovant must “.‘come forward with enough evidence to support a jury verdict in its favor, and the motion will not be defeated merely ... on the basis of conjecture or surmise.’ ”
 
 Trans Sport v. Starter Sportswear,
 
 964 F.2d 186, 188 (2d Cir.1992) (citation omitted).
 

 In assessing materials such as affidavits, exhibits, interrogatory answers, and depositions to determine whether the moving party has satisfied its burden, the court must view the record “in the light most favorable to the party opposing the motion” by resolving “all ambiguities and draw[ing] all factual inferences in favor of the party against whom summary judgment is sought.”
 
 Chambers,
 
 43 F.3d at 36. “If, as to the issue on which summary judgment is sought, there is any evidence in the record from any source from which a
 
 reasonable
 
 inference could be drawn in favor of the moving party, summary judgment is improper.”
 
 Id.
 
 at 37 (emphasis added).
 

 II.
 
 Eleventh Amendment
 

 Defendants New York State, OMH, and MPC argue that Greenwood’s suit against them is barred by the Eleventh Amendment. Greenwood, however, devotes no attention to this argument. The only allegations by Greenwood which bear on this issue are those in his Second Amended Complaint, wherein he describes OMH as a “duly-constituted agency of the State of New York which is statutorily charged with the responsibility to provide habitation, care, treatment and rehabilitation of certain mentally ill persons within the State of New York,” and he describes MPC as “the local mental health hospital facility owned, operated, controlled and maintained by the defendant, OMH.” (Am. Compl. ¶¶7, 8.) Notwithstanding Greenwood’s utter failure to brief the issue, my independent examination persuades me that defendants New York State, OMH, and MPC are entitled to immunity from suit by the Eleventh Amendment.
 

 The Amendment provides: “The Judical power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State.” U.S. Const, amend. XI. “The reach of the amendment was judicially expanded beyond its text in
 
 Hans v. Louisiana,
 
 134 U.S. 1, 10 S.Ct. 504, 33 L.Ed. 842 (1890), to bar citizens from suing their own states in federal court.”
 
 In re 995 Fifth Ave. Assocs., L.P.,
 
 963 F.2d 503, 506-07 (2d Cir. 1992),
 
 cert. denied,
 
 506 U.S. 947, 113 S.Ct. 395, 121 L.Ed.2d 302 (1992);
 
 accord Mancuso v. New York State Thruway Auth.,
 
 86 F.3d 289, 292 (2d Cir.1996). Further, not only does the Amendment apply to suits naming the State as a party, but it applies to suits naming governmental entities which are “more like ‘an arm of the State,’ such as a state agency, than like ‘a municipal corporation or other political subdivision.’ ”
 
 Mancuso,
 
 86 F.3d at 292 (citation omitted);
 
 accord
 
 
 *1065
 

 Komlosi v. New York State Office of Mental Retardation and Developmental Disabilities,
 
 64 F.3d 810, 815 (2d Cir.1995). If an entity falls within the Eleventh Amendment’s definition of “one of the United States,” the suit is barred whether the plaintiff seeks retroactive damages or prospective relief, such as reinstatement.
 
 Komlosi,
 
 64 F.3d at 815. Of course, official capacity suits against state officials seeking “prospective equitable relief when [the] state officials failed to conform their conduct to the strictures of the substantive provisions of the Fourteenth Amendment” are not considered to be suits against “one of the United States” for Eleventh Amendment purposes.
 
 Santiago v. New York State Dep’t of Correctional Servs.,
 
 945 F.2d 25, 29 (2d Cir.1991) (discussing the landmark case of
 
 Ex Parte Young,
 
 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908)),
 
 cert. denied,
 
 502 U.S. 1094, 112 S.Ct. 1168, 117 L.Ed.2d 414 (1992). Finally, in addition to precluding federal-law claims, the Amendment “applies as well to state-law claims brought into federal court under pendent jurisdiction.”
 
 Pennhurst State School & Hospital v. Halderman,
 
 465 U.S. 89, 121, 104 S.Ct. 900, 919, 79 L.Ed.2d 67 (1984),
 
 quoted by Almendral v. New York State Office of Mental Health,
 
 743 F.2d 963, 968-69 (2d Cir.1984).
 

 “Despite this general bar to suits against states created by the Eleventh Amendment, there are two well-established ways to provide judicial power over such cases: abrogation of immunity by Congress and waiver of immunity by a state.”
 
 995 Fifth Ave.,
 
 963 F.2d at 507. As for congressional abrogation, “Congress must make its intent to abrogate Eleventh Amendment immunity ‘unmistakably clear,’ ” and “the constitutional provision under which Congress legislates its purported abrogation must grant Congress the power to override the Eleventh Amendment.”
 
 Id.
 
 (citations omitted). “Waiver of Eleventh Amendment immunity ... is triggered by some affirmative activity of a state, such as a state’s enactment of legislation by which it consents to be sued in federal court____”
 
 Id.
 
 A state’s waiver, however, will be found “only where stated by the most express language or by such overwhelming implication from the text as [will] leave no room for any other reasonable construction.”
 
 Id.
 
 at 509 (citation and internal quotation marks omitted).
 

 Based on the foregoing principles, I find that Greenwood’s suit against New York State, OMH, and MPC is barred by the Eleventh Amendment. First, all three defendants are considered state defendants under the Eleventh Amendment.
 
 See Komlosi,
 
 64 F.3d at 815 (“For Eleventh Amendment purposes, [New York State Office of Mental Retardation and Developmental Disabilities] is to be considered an arm of New York State.”);
 
 Francois v. Office of Mental Health,
 
 715 F.Supp. 69, 72 (S.D.N.Y.1989) (applying the Eleventh Amendment to the Bronx Psychiatric Center, a facility within OMH);
 
 Kirwin v. New York State Office of Mental Health,
 
 665 F.Supp. 1034, 1037 (E.D.N.Y.1987) (“Therefore, plaintiffs Section 1983 claims against [OMH] are barred by the Eleventh Amendment.”);
 
 Davis v. Buffalo Psychiatric Ctr.,
 
 623 F.Supp. 19, 20-21 (W.D.N.Y.1985) (applying the Eleventh Amendment to OMH and the Buffalo Psychiatric Center, a facility within OMH);
 
 Ganguly v. New York State Dep’t of Mental Hygiene,
 
 511 F.Supp. 420, 424-25 (S.D.N.Y. 1981) (applying the Eleventh Amendment to Dunlap Manhattan Psychiatric Center, a facility within the New York State Department of Mental Hygiene); N.Y. Mental Hyg. Law § 7.17(a), (b) (establishing MPC as a hospital within OMH whose “organization, administration, and operation” are established by and within the jurisdiction of OMH). Thus, as a general matter, all of Greenwood’s claims against state defendants, whether based on federal or state law and whether seeking retroactive or prospective relief, are barred in federal court. Second, Section 1983 does not represent a congressional abrogation of this Eleventh Amendment immunity,
 
 Lipofsky v. Steingut,
 
 86 F.3d 15, 18 (2d Cir.1996) (per curiam) (citing
 
 Quern v. Jordan,
 
 440 U.S. 332 (1979)), nor has Greenwood presented any authority suggesting that New York State, OMH, or MPC waived their Eleventh Amendment immunity. Accordingly, Greenwood’s claims against these defendants are dismissed without prejudice to refiling them in state court.
 

 
 *1066
 
 III.
 
 Qualified Immunity
 

 Individual defendants rely on the doctrine of qualified immunity in support of their motion for summary judgment. “Qualified immunity is an affirmative defense that the defendants have the burden of raising in their answer and establishing at trial or on a motion for summary judgment.”
 
 In re State Police Litig.,
 
 88 F.3d 111, 123 (2d Cir.1996). This doctrine applies only to claims “arising out of their performance of discretionary official functions,”
 
 Doe v. Phillips,
 
 81 F.3d 1204, 1211 (2d Cir.1996), and “protects government officials from suits against them in their individual capacity for money damages where ‘their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known,’ ”
 
 State Police Litig., 88
 
 F.3d at 122-23 (quoting
 
 Harlow v. Fitzgerald, 457
 
 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982)).
 

 Thus, defendants claiming qualified immunity must show either: (1) that the right “was [not] clearly established at the time of the alleged violation,” or (2) that “reasonable persons in their position would not have understood that their conduct was within the scope of the established prohibition.”
 
 State Police Litig.,
 
 88 F.3d at 123;
 
 accord Komlosi,
 
 64 F.3d at 815;
 
 see Ryder v. United States,
 
 — U.S.-,-, 115 S.Ct. 2031, 2037, 132 L.Ed.2d 136 (1995) (“Qualified immunity specifically protects public officials from the specter of damages liability for judgment calls made in a legally uncertain environment.”);
 
 Mitchell v. Forsyth,
 
 472 U.S. 511, 535, 105 S.Ct. 2806, 86 L.Ed.2d 411 (1985) (holding that a defendant was entitled to qualified immunity where “the legality of the warrantless domestic security wiretap ... was, at that time, an open question”).
 

 “In order to be clearly established, the ‘contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right.’ ”
 
 Doe,
 
 81 F.3d at 1211 (quoting
 
 Anderson v. Creighton,
 
 483 U.S. 635, 640, 107 S.Ct. 3034, -, 97 L.Ed.2d 523 (1987)). Further, prior case law must indicate the existence of the right with “reasonable specificity.”
 
 State Police Litig.,
 
 88 F.3d at 123;
 
 accord Doe,
 
 81 F.3d at 1211;
 
 see Mitchell,
 
 472 U.S. at 528, 105 S.Ct. at-(defining the issue as “whether the law clearly proscribed the actions the defendant claims he took”). Therefore, a court must consider “ “whether the decisional law of the Supreme Court and the applicable circuit court support the existence of the right in question.’”
 
 Doe,
 
 81 F.3d at 1211 (quoting
 
 Ying Jing Gan v. City of New York,
 
 996 F.2d 522, 532 (2d Cir.1993)). However, “though officials are not required to anticipate subsequent legal developments ..., a right may have been clearly defined even if the defendants’ specific action had not previously been held unlawful if, in the light of pre-existing law, the unlawfulness [of the action was] ... apparent.”
 
 State Police Litig.,
 
 88 F.3d at 123 (citations and internal quotation marks omitted). Finally, “[u]nder the
 
 Harlow
 
 standard ..., an allegation of malice is not sufficient to defeat immunity if the defendant acted in an objectively reasonable manner.”
 
 Malley v. Briggs, 475
 
 U.S. 335, 341, 106 S.Ct. 1092, 1096, 89 L.Ed.2d 271 (1986).
 

 Greenwood contends that individual defendants deprived him, without due process of law, of his property right in his clinical privileges and his liberty interest in his chosen occupation under the “stigma plus” theory of
 
 Paul v. Davis,
 
 424 U.S. 693, 96 S.Ct. 1155, 47 L.Ed.2d 405 (1976). However, Greenwood “has not cited any case demonstrating that [defendants’] conduct constituted a deprivation of a clearly established right.”
 
 Komlosi,
 
 64 F.3d at 816.
 

 A.
 
 No Clearly Established Property Right in Clinical Privileges
 

 As for his alleged property interest in his clinical privileges, the only cases cited by Greenwood which existed at the time of individual defendants’ denial of his clinical privileges are
 
 Board of Regents v. Roth,
 
 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972) and
 
 Perry v. Sindermann,
 
 408 U.S. 593, 92 S.Ct. 2694, 33 L.Ed.2d 570 (1972). Based on these cases, Greenwood argues that “the procedural protections provided in the officially-promulgated MPC Medical Staff By-Laws and MPC Credentials Manual created an implied contract between the hospital administration
 
 *1067
 
 and the members of the Medical Staff at MPC.” (Opp.Memo. at 18.) Regardless of whether such an implied contract may be found under current law, I find that its existence was not clearly established as of January 19, 1982, the date Koz denied Greenwood’s appeal of the revocation of his clinical privileges.
 

 In
 
 Roth,
 
 the Supreme Court addressed a claim by a nontenured teacher at a state university that he had a property right in continued employment.
 
 Roth,
 
 408 U.S. at 566, 92 S.Ct. at 2703. Whereas state statutory law required that “a tenured teacher cannot be ‘discharged except for cause upon written charges’ and pursuant to certain procedures, ... Rules promulgated by the Board of Regents ... provide no real protection for a nontenured teacher who simply is not re-employed for the next year.”
 
 Id.
 
 at 567, 92 S.Ct. at 2704. The teacher in
 
 Roth
 
 was informed that he would not be rehired for the next year, although he was not given any reason for the decision or any opportunity to challenge the decision at a hearing.
 
 Id.
 
 at 568, 92 S.Ct. at 2704-05.
 

 The Court held that “the [teacher did not have] a constitutional right to a statement of reasons and a hearing on the University’s decision not to rehire him for another year.”
 
 Id.
 
 at 569, 92 S.Ct. at 2705. After noting that protected property interests may extend “beyond actual ownership or real estate, chattels, or money,” the Court recognized that procedural due process protections do “observe[] certain boundaries.”
 
 Id.
 
 at 572, 92 S.Ct. at 2706. In this context, the Court framed the oft-quoted standard for defining due process property interests: “To have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it.”
 
 Id.
 
 at 577, 92 S.Ct. at 2709. This legitimate claim of entitlement does not arise from the Constitution, but from “existing rules or understandings that stem from an independent source such as state law — rules or understandings that secure certain benefits and that support claims of entitlement to those benefits.”
 
 Id.
 
 In declining to find a legitimate claim of entitlement by the teacher, the Court noted that “the important fact in this case is that” the terms of the teacher’s appointment “did not provide for contract renewal absent ‘sufficient cause,’” nor did they make any “provision for renewal whatsoever.”
 
 Id.
 
 at 578, 92 S.Ct. at 2709.
 

 The Court in
 
 Perry
 
 addressed whether even in the absence of formal contractual or tenure security in continued employment at a state college, a teacher nevertheless may show a property interest in continued employment entitled to due process protection.
 
 Perry,
 
 408 U.S. at 599, 92 S.Ct. at 2698-99. The teacher argued that a
 
 de facto
 
 tenure system existed, citing the college’s official Faculty Guide and guidelines promulgated by the Coordinating Board of the Texas College and University System.
 
 Id.
 
 at 600, 92 S.Ct. at 2699. The Faculty Guide provided that although the college “has no tenure system,” each faculty member should “feel that he has permanent tenure as long as his teaching services are satisfactory and as long as he displays a cooperative attitude toward his coworkers and his superiors.”
 
 Id.
 
 The guidelines provided that a teacher employed for seven years “may expect to continue in his academic position unless adequate cause for dismissal is demonstrated in a fair hearing, following established procedures of due process.”
 
 Id. at
 
 600 n. 6, 92 S.Ct. at 2699 n. 6.
 

 The Court held that the teacher “alleged the existence of rules and understandings, promulgated and fostered by state officials, that may justify his legitimate claim of entitlement to continued employment absent ‘sufficient cause.’ ”
 
 Id.
 
 at 602-03, 92 S.Ct. at 2700-01. Accordingly, the Court affirmed the Court of Appeals’ judgment remanding the case back to the District Court, so the teacher could “be given an opportunity to prove the legitimacy of his claim of such entitlement in light of ‘the policies and practices of the institution.’ ”
 
 Id.
 
 at 603, 92 S.Ct. at 2700.
 

 I do not find that
 
 Roth
 
 or
 
 Perry
 
 clearly establishes Greenwood’s property interest in his clinical privileges. This is not to say that these cases lend no support to the existence of such a property interest, but merely that a “legally uncertain environ
 
 *1068
 
 ment,”
 
 Ryder,
 
 — U.S. at-, 115 S.Ct. at 2037, or “open question,”
 
 Mitchell,
 
 472 U.S. at 535, 105 S.Ct. at 2820, existed as to this issue. First, both
 
 Roth
 
 and
 
 Perry
 
 addressed claims of property interests by public school teachers with respect to their continued employment. Thus, one must leap from the context of property rights in continued employment to the context of property rights in privileges ancillary to one’s continued employment, such as the clinical privileges herein.
 
 See Hannah v. Larche,
 
 363 U.S. 420, 442, 80 S.Ct. 1502, 1514, 4 L.Ed.2d 1307 (1960) (“ ‘Due process’ is an elusive concept. Its exact boundaries are undefinable, and its content varies according to specific factual contexts.”).
 

 Second, at the time of individual defendants’ conduct, the Court of Appeals had not rendered any decision on whether clinical privileges could constitute protected property interests. Instead, Court of Appeals decisions interpreting
 
 Roth
 
 and
 
 Perry
 
 either shed no light on the issue or reinforced the murky nature of this area of law. In
 
 Baden,
 
 for example, the Court held that New York City’s Chief Medical Examiner was not entitled to a hearing prior to his removal from this position.
 
 Baden v. Koch,
 
 638 F.2d 486, 488 (2d Cir.1980). After interpreting
 
 Roth
 
 and
 
 Perry
 
 as requiring that a protected property right “come from either state law or, in its absence, from mutual understandings of the parties,”
 
 id.
 
 at 489, the Court held that the state statutory law at issue did not require a pretermination hearing and, therefore, that any mutual understandings contrary to the express provisions of regulations and statutes were of no avail to the Chief Medical Examiner.
 
 Id.
 
 at 492.
 

 In
 
 Quinn,
 
 the Court of Appeals affirmed the District Court’s conclusion that the Rehabilitation Director of the Syracuse Model Neighborhood Corporation, which was organized as an instrument of urban redevelopment in Syracuse, had “no cognizable property interest in his employment.”
 
 Quinn v. Syracuse Model Neighborhood Corp.,
 
 613 F.2d 438, 447 (2d Cir.1980). In rendering its decision, the Court recognized the uncertainties which remained after
 
 Roth
 
 and
 
 Perry.
 
 It stated that
 

 “[property” protected by the Fourteenth Amendment is, like liberty, potentially all-embracing____ Although the long line of cases under Section 1983 attempting to pour content into this concept is confusing at best, there appears to be general agreement that a property interest arises only when an individual possesses “a legitimate claim of entitlement” to continued job tenure____ The requisite origin of this “entitlement” is unsettled, but it apparently must arise from “existing rules or understandings that stem from an independent source such as state law.” ... The Supreme Court has suggested, on occasion, that state law is the sole vehicle for the creation of property rights, ..., but it has, more recently, instructed that “federal constitutional law determines whether [an] interest rises to the level of a ‘legitimate claim of entitlement’ protected by the Due Process Clause.”
 

 Quinn,
 
 613 F.2d at 447;
 
 see Simard v. Board of Educ. of the Town of Groton,
 
 473 F.2d 988, 992 (2d Cir.1973) (describing the property and liberty interests protected by the Due Process Clause as “elusive concepts”).
 

 In addition to expressing the lack of clarity of the standards governing due process property interests, the Court’s decision in
 
 Quinn
 
 may be read, in the context of public employment, as suggesting that these property interests are confined to rights in continued employment, rather than in ancillary privileges such as those at issue in the instant case.
 
 See id.
 
 (“[T]here appears to be general agreement that a property interest arises
 
 only
 
 when an individual possesses ‘a legitimate claim of entitlement’ to
 
 continued job tenure.”)
 
 (emphasis added);
 
 see also Huntley v. Community Sch. Bd. of Brooklyn,
 
 543 F.2d 979, 984 (2d Cir.1976) (declining to find a property interest in an acting school principal’s continued employment),
 
 cert. denied,
 
 430 U.S. 929, 97 S.Ct. 1547, 51 L.Ed.2d 773 (1977);
 
 Teachers United for Fair Treatment v. Anker,
 
 445 F.Supp. 469, 472-73 (E.D.N.Y.1977) (“Simply put, absent termination of that employment, an ‘interest’ in employment does not rise to the level of a property or liberty right constitutionally protected by procedural due process.”).
 

 
 *1069
 
 Third, decisions which specifically address physician’s due process property rights, whether from within the Second Circuit or from other Circuits, reach mixed results on the existence of these property rights. In
 
 Edwards,
 
 a California state court, while addressing a statute of limitations issue, stated that “[i]f the right to practice medicine is a property right, it necessarily follows that the right of a qualified doctor to use hospital facilities to practice surgery and gynecology also involves a property right.”
 
 Edwards v. Fresno Community Hosp.,
 
 38 Cal.App.3d 702, 113 Cal.Rptr. 579, 581 (1974). Similarly, in
 
 Ong,
 
 the Court of Appeals for the Ninth Circuit determined that a physician had a “sufficient property interest in a surgical residency that entitles [the physician] to due process and a hearing.”
 
 Ong v. Tovey,
 
 552 F.2d 305, 307 (9th Cir.1977). The Court of Appeals for the Fourth Circuit, while resolving a claim of unconstitutional bias on the part of a member of an administrative agency, stated that “[i]n the case of a withdrawal or denial of hospital privileges, procedural due process entitles a physician to a full, evidentiary administrative hearing, before such privileges may be permanently or finally terminated.”
 
 Duffield v. Charleston Area Medical Ctr., Inc.,
 
 503 F.2d 512, 515 (4th Cir.1974),
 
 overruled by Modaber v. Culpeper Memorial Hosp., Inc.,
 
 674 F.2d 1023, 1025 (4th Cir.1982) (overruling the finding of state action based on the receipt of federal assistance under the Hill-Burton Act).
 

 Other cases, however, undermine the assertion that the existence of a property right in clinical privileges was clearly established. In
 
 Schlein,
 
 then District Judge Newman addressed a physician’s Section 1983 claim against a hospital for rejecting the physician’s application for staff privileges at the hospital.
 
 Schlein v. Milford Hosp.,
 
 423 F.Supp. 541, 542 (D.Conn.1976),
 
 affd,
 
 561 F.2d 427 (2d Cir.1977). Although Judge Newman found that the physician received sufficient procedural due process,
 
 id.
 
 at 544, Judge Newman rendered no holding on whether a property interest existed in the staff privileges. Instead, he assumed its existence only for the purposes of the defendant’s motion for summary judgment.
 
 Id.
 
 at 543 n. 1. Further, he expressed doubt as to whether the physician indeed had such a property right.
 
 Id.
 
 In
 
 Adler,
 
 the Pennsylvania Supreme Court held that a private physician on the active medical staff of a public teaching hospital had no property interest, whether under the hospital’s by-laws or otherwise, in his continued ability to use certain hospital facilities and equipment to treat his patients.
 
 Adler v. Montefiore Hosp. Assoc. of W. Pa.,
 
 453 Pa. 60, 311 A.2d 634, 645 (1973),
 
 cert. denied,
 
 414 U.S. 1131, 94 S.Ct. 870, 38 L.Ed.2d 755 (1974). Similarly, the District Court for the Eastern District of Louisiana concluded that a physician who applied for medical staff privileges at a state hospital had no property interest in those privileges and, therefore, was not entitled to a hearing prior to the rejection of his application.
 
 Hyde v. Jefferson Parish Hosp. Dist. No. 2,
 
 513 F.Supp. 532, 545 (E.D.La.1981),
 
 rev’d on other grounds,
 
 686 F.2d 286 (5th Cir.1982),
 
 rev’d and remanded on other grounds,
 
 466 U.S. 2, 104 S.Ct. 1551, 80 L.Ed.2d 2 (1984).
 

 Accordingly, based on the state of the law as of January 19,1982, including the absence of any Supreme Court or Court of Appeals decision on the instant issue, I find that Greenwood did not have a clearly established property right in his clinical privileges. Therefore, individual defendants are entitled to qualified immunity, and this claim is dismissed with prejudice.
 

 B.
 
 No Clearly Established “Stigma Plus” Liberty Interest
 

 Greenwood also alleges that the individual defendants deprived him of his protected liberty interest in his chosen occupation by making “false and stigmatizing charges against plaintiff in conjunction with their revocation of his clinical privileges at MPC.” (Opp.Memo. at 30.) As with Greenwood’s other due process claim, however, I find that this right was not clearly established as of January 19, 1982.
 

 In
 
 Paul v. Davis,
 
 424 U.S. 693, 96 S.Ct. 1155, 47 L.Ed.2d 405 (1976), the Supreme Court addressed whether a charge of defamation by government officials, “standing alone and apart from any other governmental
 
 *1070
 
 action with respect to [the plaintiff], stated a claim for relief under 42 U.S.C. § 1983 and the Fourteenth Amendment.”
 
 Id.
 
 at 694, 96 S.Ct. at 1157. The plaintiff appeared on a flyer prepared and circulated by the defendant police departments in their effort to alert local merchants of possible shoplifters.
 
 Id.
 
 at 694-95, 96 S.Ct. at 1157-58. Although at the time of circulation of the flyers the plaintiff had been charged with shoplifting, the charge was dismissed shortly after the circulation.
 
 Id.
 
 at 696, 96 S.Ct. at 1158. Despite assuming that the flyer “would inhibit [plaintiff] from entering business establishments for fear of being suspected of shoplifting and possibly apprehended, and would seriously impair [plaintiffs] future employment opportunities,”
 
 id.
 
 at 697, 96 S.Ct. at 1159, the Court held that the plaintiff failed to state a claim under Section 1983,
 
 id.
 
 at 694, 96 S.Ct. at 1157.
 

 The Court concluded that “defamation, standing alone,” was not sufficient to constitute a denial of “any ‘liberty5 protected by the procedural guarantees of the Fourteenth Amendment.”
 
 Id.
 
 at 709, 96 S.Ct. at 1164. In support of its decision, the Court interpreted its discussion of this issue in
 
 Roth:
 

 While
 
 Roth
 
 recognized that governmental action defaming an individual in the course of declining to rehire him could entitle the person to notice and an opportunity to be heard as to the defamation, its language is quite inconsistent with any notion that a defamation perpetrated by a governmental official but unconnected with any refusal to rehire would be actionable under the Fourteenth Amendment.
 

 * * * * * *
 

 Thus it was not thought sufficient to establish a claim under § 1983 and the Fourteenth Amendment that there simply be defamation by a state official; the defamation had to occur in the course of the termination of employment. Certainly there is no suggestion in
 
 Roth
 
 to indicate that a hearing would be required each time the State in its capacity as employer might be considered responsible for a statement defaming an employee who continues to be an employee.
 

 Id.
 
 at 709-10, 96 S.Ct. at 1165.
 

 Far from clearly establishing a liberty interest in connection with the revocation of Greenwood’s clinical privileges, this discussion in
 
 Paul
 
 suggests that the defamatory conduct must occur in connection with the termination of one’s employment to be actionable under Section 1983.
 
 Cf. Neu v. Corcoran,
 
 869 F.2d 662, 667 (2d Cir.) (“Although
 
 Paul
 
 is the foundation for all subsequent cases dealing with government defamation, its meaning is not unambiguous____
 
 Paul
 
 has been widely interpreted as holding that ‘stigma plus’ is required to establish a constitutional deprivation, ... but it is not entirely clear what the ‘plus’ is.”),
 
 cert. denied,
 
 493 U.S. 816, 110 S.Ct. 66, 107 L.Ed.2d 33 (1989).
 

 Further, Court of Appeals decisions from the relevant time reinforce this interpretation of
 
 Paul.
 
 In
 
 Huntley,
 
 the Court held that “[t]he Supreme Court in
 
 [Paul]
 
 again made it clear, as it had in
 
 Roth,
 
 that the protections of the Fourteenth Amendment are available whenever the state,
 
 in terminating an individual’s employment,
 
 makes charges against him that will seriously impair his ability to take advantage of other employment opportunities.”
 
 Huntley v. Community Sch. Bd. of Brooklyn,
 
 543 F.2d 979, 985 (2d Cir.1976) (emphasis added). Similarly, in
 
 Quinn,
 
 the Court stated: “It is not seriously disputed that Quinn’s complaint fulfills the
 
 mandate
 
 of
 
 Paul v. Davis,
 
 424 U.S. 693, 710, 96 S.Ct. 1155, 1165, 47 L.Ed.2d 405 (1976), that the alleged imposition of a stigma ‘occur
 
 in the course of the termination of employment.’ ” Quinn,
 
 613 F.2d at 446 n. 3 (emphasis added);
 
 see also Gentile v. Wallen,
 
 562 F.2d 193, 197 (2d Cir.1977) (addressing a claim of stigmatization resulting from the plaintiffs termination).
 

 “In light of these decisions, [I] do not think that the law of this Circuit clearly established] that the governmental defamation alleged by [Greenwood] rises to the level of a constitutional violation, rather than simply a state law tort.”
 
 Neu,
 
 869 F.2d at 669. Accordingly, individual defendants are entitled to qualified immunity and this claim is dismissed with prejudice.
 

 
 *1071
 
 IV.
 
 State Law Claims
 

 As for Greenwood’s state law claims, I decline to exercise supplemental jurisdiction over these claims because I have dismissed all claims over which I had original jurisdiction. 28 U.S.C. § 1367(c)(3). These claims are dismissed without prejudice.
 

 CONCLUSION
 

 Greenwood’s claims against defendants New York State, the Office of Mental Health, and the Manhattan Psychiatric Center are dismissed without prejudice to refiling them in state court. Greenwood’s 42 U.S.C. § 1983 claims against the remaining defendants are dismissed with prejudice, and Greenwood’s state law claims are dismissed without prejudice.
 

 The Clerk of the Court shall mark this action closed.
 

 SO ORDERED.